1   FRANCIS M. GREGOREK (144785)
    gregorek@whafh.com
2   BETSY C. MANIFOLD (182450)
    manifold@whafh.com
3   RACHELE R. RICKERT (190634)
    rickert@whafh.com
4   PATRICK H. MORAN (270881)
    moran@whafh.com
5   WOLF HALDENSTEIN ADLER
      FREEMAN & HERZ LLP
6   750 B Street, Suite 2770
    San Diego, CA 92101
7   Telephone: 619/239-4599
    Facsimile: 619/234-4599
8
9   Attorneys for Plaintiffs

10              UNITED STATES DISTRICT COURT
11            CENTRAL DISTRICT OF CALIFORNIA

12   DAVID L. DEFREES,               Case No.  CV11 04272 GAF(SR)
13   SIMON GERSHON and
     FREDERICK RICH, in the right of and
14   for the benefit of U.S. Aerospace, Inc.
                                      VERIFIED DERIVATIVE
15              Plaintiffs,           COMPLAINT
16          v.                        JURY TRIAL DEMANDED
17   JOHN C. KIRKLAND,
     LUCE, FORWARD, HAMILTON &
18   SCRIPPS LLP,
     MICHAEL C. CABRAL,
19   JERROLD S. PRESSMAN,
     KENNETH J. KOOCK,
20   MICHAEL L. GOLDBERG,
     JAMES D. HENDERSON,
21   CHARLES S. ARNOLD,
     TUSA ACQUISITION CORPORATION,
22   AMERICAN DEFENSE
     INVESTMENTS, LLC and
23   DOES 1 through 10,
24              Defendants,
25          and
26   U.S. AEROSPACE, INC.
27              Nominal Defendant.
28

Plaintiffs David Defrees, Simon Gershon and Frederick Rich ("Plaintiffs"), by and through their attorneys, derivatively on behalf of U.S. Aerospace, Inc. ("USAE" or the "Company"), allege upon personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through their attorneys, which included, among other things, a review of Company filings with the Securities and Exchange Commission ("SEC"), news reports, press releases, and other publicly available documents regarding the Company and the Defendants, as follows:

## I.    NATURE OF THE ACTION

1.    Plaintiffs, derivatively on behalf of Nominal Defendant USAE, seek relief for the damages sustained and to be sustained by the Company for wrongdoing committed between April 1, 2010 and the present (the "Relevant Period") against:

> a.    John C. Kirkland ("Kirkland") and Luce, Forward, Hamilton & Scripps LLP ("Luce") for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, legal malpractice and corporate waste,
>
> b.    certain members of USAE's Board of Directors (the "Board"), Michael C. Cabral ("Cabral"), Jerrold S. Pressman ("Pressman"), Kenneth J. Koock ("Koock"), Michael L. Goldberg ("Goldberg"), and James D. Henderson ("Henderson") (collectively, the "Director Defendants"), for breach of fiduciary duty, aiding and abetting breach of fiduciary duty and corporate waste,
>
> c.    the holders of USAE's Series E Preferred Stock, TUSA Acquisition Corp. ("TUSA") and American Defense Investments, LLC ("ADI") (the "Majority Shareholder Defendants"), for breach of fiduciary duty and/or aiding and

1   abetting breach of fiduciary duty; and

2           d.    Charles S. Arnold ("Arnold") for aiding and abetting breach of

3               fiduciary duty.[1]

4         2.    By the acts alleged herein, Defendant Kirkland has violated numerous

5   provisions of the California Rules of Professional Conduct, ignored irreparable

6   conflicts between his client USAE and ADI, and subsumed his obligations to USAE

7   in favor of the interests of ADI and the other Series E preferred shareholders.

8         3.    The Director Defendants, four of which were hand-picked by Majority

9   Shareholder Defendant ADI, breached their fiduciary duties and aided and abetted

10   Defendants Kirkland and Luce in their breaches of fiduciary duties by purporting to

11   ratify Kirkland's wrongful conduct to the detriment of the Company and committed

12   corporate waste by permitting the Company to issue millions of shares of Company

13   stock to the Majority Shareholders without meaningful consideration, and by

14   permitting millions of shares to be issued to purported "consultants", Omnicom

15   Holdings. Inc. ("Omnicom") and Summit Trading, without meaningful

16   consideration.

17         4.    Moreover, the Majority Shareholder Defendants, ADI and TUSA,

18   which control a majority of the USAE Board, have breached and continue to breach

19   their fiduciary duties owed to the Company and the minority shareholders by

20   insisting that the Company be placed into bankruptcy rather than accept financing,

21   which could allow the Company to become profitable under the premise that the

22   Majority Shareholder Defendants could emerge from the proceedings owning a shell

23   company containing the necessary licenses to enter into government contracts and

24   other valuable Company assets.

25         5.    Finally, Defendant Arnold has aided and abetted the aforementioned

26   breaches of fiduciary duty by Defendants Kirkland and Luce, the Director

27

28   [1]    Defendants Kirkland, Luce, Cabral, Pressman, Koock, Goldberg, Henderson, TUSA and ADI are collectively referred to herein as the "Defendants."

1 Defendants and the Majority Shareholder Defendants by, among other things,
2 misrepresenting to the Company that he and Defendant Kirkland owned USAE debt
3 which was actually owed by another party. Defendant Arnold, along with
4 Defendant Kirkland, then directed the Company to expand the Board and to appoint
5 four of the Director Defendants to the USAE Board. The Director Defendants then
6 granted Arnold's company, Summit Trading, an option to purchase 5 million shares
7 of USAE for no consideration. Defendant Arnold also participated in engineering a
8 transaction which resulted in Defendants ADI and TUSA owning the majority of
9 USAE's voting shares. Defendant Arnold's wife is the President and shareholder of
10 TUSA. Finally, after Defendants Kirkland and Pressman engineered a sham
11 settlement with Omnicom whereby Omnicom was issued 15 million shares of
12 Company stock worth $2.3 million without consideration to the Company,
13 Defendant Arnold directed his employees to re-issue 4.5 million of those shares to a
14 series of other entities.

15 <center>**II.    JURISDICTION AND VENUE**</center>

16     6.    This Court has jurisdiction over this action pursuant to 28 U.S.C.
17 §1332(a)(1) in that Plaintiffs and Defendants are citizens of different states and the
18 matter in controversy exceeds $75,000, exclusive of interests and costs. This action
19 is not a collusive action designed to confer jurisdiction on a court of the United
20 States that it would not otherwise have.

21     7.    Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391(a)
22 because a substantial portion of the events or omissions giving rise to the claims
23 alleged herein occurred within this Judicial District. Moreover, Defendants have
24 received substantial payments in this Judicial District by doing business here and
25 engaging in numerous activities that had an effect in this Judicial District.

26 <center>**III.    PARTIES**</center>

27 A.    <u>**The Plaintiffs**</u>

28     8.    Plaintiff **David L. DeFrees** is a resident of Leavenworth, Kansas and

<center>- 3 -</center>

1   has owned at all times relevant to this action, and continues to own, the Company's
2   common stock.

3       9.    Plaintiff **Simon Gershon** is a resident of Merrick, New York and has
4   owned at all times relevant to this action, and continues to own, the Company's
5   common stock.

6       10.    Plaintiff **Frederick Rich** is a resident of Tomball, Texas and has
7   owned at all times relevant to this action, and continues to own, the Company's
8   common stock.

9   **B.**    **The Nominal Defendant**

10       11.    Nominal Defendant **U.S. Aerospace, Inc.** ("USAE" or the
11   "Company"), formerly known as New Century Companies, Inc. ("New Century"),
12   was incorporated in the state of Delaware on August 1, 1980 and is headquartered at
13   10291 Trademark Avenue, Rancho Cucamonga, California, County of San
14   Bernardino.

15       12.    On October 9, 2009, New Century entered into a share exchange
16   agreement with Precision Aerostructures, Inc. ("PAI") pursuant to which the sole
17   shareholder of PAI, Defendant Cabral, agreed to transfer all capital stock of PAI to
18   New Century. USAE operates through PAI. USAE's common stock is quoted on
19   the Over-the-Counter Bulletin Board ("OTC Bulletin Board") under the symbol
20   "USAE". On or about April 19, 2010, the Company changed its name from New
21   Century Companies, Inc. to U.S. Aerospace, Inc.

22       13.    USAE is an aerospace and defense contractor engaged in the
23   production of aircraft assemblies, structural components, and highly engineered,
24   precision machined details for the United States Department of Defense, United
25   States Air Force, Lockheed Martin Corporation, The Boeing Company, L-3
26   Communications Holdings, Inc., the Middle River Aircraft Systems subsidiary of
27   General Electric Company, and other aircraft manufacturers, aerospace companies,
28   and defense contractors. The Company supplies structural aircraft parts for military

1   aircraft such as the P-3 Orion, and wide-body commercial airliners such as the
2   Boeing 747.

3   C.   **Defendants Kirkland and Luce, Forward, Hamilton & Scripps LLP**

4   14.   Defendant **John C. Kirkland** is a resident of California, is an attorney
5   admitted to practice law in the state of California, is currently "Of Counsel" with
6   Defendant Luce and works from the firm's Los Angeles office.  From on or about
7   February 18, 2009 to March 5, 2011, Defendant Kirkland was a partner of
8   Defendant Luce.  During the Relevant Time Period, Defendant Kirkland and his law
9   firm, Luce, served as outside legal counsel to USAE.  Defendant Kirkland has been
10  a member of or associated with at least half a dozen law firms during his legal
11  career, including: (1) Defendant Luce; (2) Dreier Stein Kahan Browne Woods
12  George; (3) Lowenstein, Sandler LLP; (4) Greenberg Traurig, LLP, (5) Weissmann
13  Wolff Bergman Coleman Grodin & Evall LLP; and (6) Cadwalader Wickersham &
14  Taft LLP.  He is also currently the Managing Director at Ironridge Global Partners.

15  15.   While a partner at Greenberg Traurig LLP, Defendant Kirkland and the
16  firm were named in a $50 million civil suit filed by a mail-order food marketing
17  company, GreatMeals, USA, Inc. ("GreatMeals"), against former boxing champion
18  George Foreman over a failed steak venture.  The suit claimed that Kirkland
19  conspired with Foreman to transfer control of certain business opportunities to
20  Kirkland's brother, Victor Kirkland.  GreatMeals also alleged that the defendants
21  acted with fraud and malice in an attempt to put it out of business by interfering with
22  a valuable contract between GreatMeals and Home Shopping Network.

23  16.   Defendant Kirkland joined Defendant Luce in 2009 after leaving Dreier
24  Stein Kahan Browne Woods George in Los Angeles, an affiliate of Dreier LLP that
25  broke up in January 2009 after Marc Dreier was charged with impersonating an in-
26  house lawyer at a Canadian pension fund.  Dreier pleaded guilty to selling more than
27  $700 million in fictitious real estate development notes and fake pension plan notes.
28  The elaborate four-year scheme, which netted roughly $400 million, led to the

implosion of Dreier's 250-attorney firm, Dreier LLP, and its affiliates, including Dreier Stein Kahan Browne Woods George.  Defendant Kirkland was one of two former partners from Dreier LLP subpoenaed by the firm's liquidating trustee in May 2009.  The Dreier bankruptcy trustee stated in court documents that he suspected Kirkland may be essentially engaging in misappropriation and fraud.  The trustee stated:  "With his new firm [Luce], Mr. Kirkland may even be directing [former Dreier] clients to pay [Luce] instead of [Dreier]."  In his efforts to marshal assets for the estate, the bankruptcy trustee obtained a court order to examine Kirkland under oath.  The bankruptcy court also issued a subpoena to Luce's managing partner, ordering the firm to produce documents relating to the Dreier bankruptcy.

17.   Defendant **Luce, Forward, Hamilton & Scripps LLP** ("Luce") is a limited liability partnership doing business in California, with offices located in San Diego, San Francisco, Los Angeles, Orange County, Carmel Valley and Rancho Santa Fe.

18.   Luce's firm website states: "Luce Forward's dynamic practice is home to attorneys working in major business centers throughout California.  We are known as a top law firm throughout the state and represent clients from across the country.  For over 135 years, our mission and values have been our guide."  Luce's mission includes "[d]eliver[ing] dedicated service at a value that larger firms cannot provide" and "[e]xceed[ing] the high expectations of sophisticated clients."  Luce's values include "[t]eamwork, loyalty, trust, communication and mutual support."

D.    **The Director Defendants**

19.   Defendant **Michael C. Cabral** is a resident of California and has been a member of the USAE Board since April 5, 2010.  He was appointed President of USAE on August 23, 2010.  Defendant Cabral founded and has served as President of the Company's wholly-owned subsidiary, Precision Aerostructures, Inc., since September 2006.  In or about April 2010, Defendant Cabral received an option to

1  purchase 1 million shares of USAE stock.

2  20.   Defendant **Jerrold S. Pressman** is a resident of California and has

3  been a member and Chairman of the USAE Board since April 5, 2010.   The

4  principals of ADI directed Defendant Kirkland and Defendant Charles S. Arnold to

5  select Defendant Pressman as a Board member.   Defendant Pressman was

6  Defendant Kirkland's client during all relevant times on unrelated matters.   In or

7  about April 2010, Defendant Pressman received an option to purchase 1 million

8  shares of USAE stock.

9  21.   Defendant **Kenneth J. Koock** is a resident of Florida and has been a

10  Director of USAE since April 5, 2010. The principals of ADI directed Defendants

11  Kirkland and Arnold to select Defendant Koock as a Board member.   In or about

12  April 2010, Defendant Koock received an option to purchase 1 million shares of

13  USAE stock.

14  22.   Defendant **Michael L. Goldberg** is a resident of Florida and has been a

15  Director of USAE since April 5, 2010.   The principals of ADI directed Defendants

16  Kirkland and Arnold to select Defendant Goldberg as a Board member.   In or about

17  April 2010, Defendant Goldberg received an option to purchase 1 million shares of

18  USAE stock.

19  23.   Defendant **James D. Henderson** is a resident of California and has

20  been a Director of USAE since April 5, 2010.   The principals of ADI directed

21  Defendants Kirkland and Arnold to select Defendant Henderson as a Board member.

22  In or about April 2010, Defendant Henderson received an option to purchase 1

23  million shares of USAE stock.

24  24.   Defendants Cabral, Pressman, Koock, Goldberg, and Henderson are

25  sometimes collectively referred to herein as the "Director Defendants."

26  **E.   Defendant Charles S. Arnold**

27  25.   Defendant Charles S. Arnold is a resident of Florida and is a principal

28  of Summit Trading Limited.   Defendant Arnold and Defendant TUSA share the

1 same address:  520 Brickell Key Drive, Suite 1607, Miami, Florida 33131.

2      26.   Upon information and belief, Defendant Arnold has a pattern and
3 practice of entering into stock promotion contracts with penny stock companies in
4 return for a substantial amount of stock in the company.  He, along with others,
5 publishes or promotes positive stories about those fledgling companies and is then
6 able to reap a windfall when the positive stories spur investors to drive these stock
7 prices higher.

8      27.   On May 21, 2002, a federal grand jury returned an Indictment charging
9 Defendant Arnold and others with one count of wire, mail and securities fraud
10 conspiracy, in violation of 18 U.S.C. § 371, thirteen counts of wire fraud, in
11 violation of 18 U.S.C. §§ 1343 and 1346, one count of mail fraud, in violation of 18
12 U.S.C. §§ 1341 and 1346, and one count of securities fraud, in violation of 15
13 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5.  Defendant Arnold was a stock promoter
14 and a controlling shareholder of a company named A1 International, Inc.
15 ("AWON"), the common stock of which was publicly traded on the over-the-
16 counter market.  According to the Indictment, Defendant Arnold and others agreed
17 to pay an approximately $2.5 million undisclosed kickback to a confidential
18 informant for the FBI and others to induce a fictitious foreign mutual fund to buy
19 approximately 4 million shares of overpriced AWON stock for a total of $8 million.
20 Defendant Arnold, however, was ultimately acquitted.

21 **F.   The Majority Shareholder Defendants**

22      28.   **Defendant TUSA Acquisition Corp. ("TUSA")** is a holder of
23 127,931 shares of USAE Series E Preferred Stock, each of which is convertible into
24 500 shares of USAE common stock.  TUSA is incorporated in Delaware and its
25 principle place of business is located (with Defendant Arnold) at 520 Brickell Key
26 Drive, #1607, Miami, Florida 33131. TUSA's President and stockholder is Daisy
27 Rodriguez, Defendant Arnold's wife.

28      29.   Defendant **American Defense Investments, LLC ("ADI")** holds

1   255,862 shares of USAE Series E Preferred Stock, each of which is convertible into
2   500 shares of USAE common stock.   ADI is incorporated in Delaware and its
3   principle place of business is located at 1301 South 75 Street, Suite 100, Omaha,
4   Nebraska.   ADI's Managing Director is Rickard N. Berkshire of Berkshire &
5   Burmeister.

6        30.   Defendants TUSA and ADI, by virtue of their conversion rights,
7   control a majority of the shares of USAE and elect its Board.   Defendants TUSA
8   and ADI are sometimes referred to herein as the "Majority Shareholder
9   Defendants."

10   **G.**   **The Doe Defendants**

11        31.   Plaintiffs do not know the true names and capacities, whether
12   individual, corporate, associate, or otherwise of defendants Does 1 through 10,
13   inclusive. Plaintiffs are informed and believe and based upon such information and
14   belief allege that each fictitious defendant was in some way responsible for,
15   participated in, or contributed to the matter and things of which Plaintiffs complain
16   herein, and in some form and under some theory, is subject to liability therefore.
17   When the exact nature and identity of such fictitious defendants' responsibility for,
18   participation in, and contribution to the matters herein alleged is ascertained,
19   Plaintiffs will seek leave to amend this Complaint to set forth the same.

20        **IV.   SUBSTANTIVE ALLEGATIONS**

21        32.   In October 2009, when New Century Companies purchased PAI, New
22   Century's Board consisted of David Duquette, the President of the Company, and
23   Josef Czikmantori, the acting Secretary.

24        33.   At the time, a New York-based asset management firm owned
25   approximately $3.5 million of New Century's debt.   Subsequent to New Century's
26   October 2009 purchase of PAI, Defendants Kirkland and Arnold acquired from the
27   New York-based asset management firm for approximately $100,000 an option to
28   purchase its debt.   Defendants Kirkland and Arnold then approached Mr. Duquette

and Mr. Czikmantori and threatened to foreclose on New Century's debt unless New Century provided Defendants Kirkland and Arnold with a controlling number of seats on its Board. Defendants Kirkland and Arnold based these threats, in part, on the false pretense that they actually owned the debt.

34.    As a result, on or about April 5, 2010, Mr. Duquette and Mr. Czimantori expanded the number of directors on New Century's Board to seven and appointed six new directors. Of those six new directors, Defendants Pressman, Koock, Goldberg and Henderson were appointed at the direction of Defendants Kirkland and Arnold. The principals of ADI directed Defendants Kirkland and Arnold to select those specific new Board members. Also appointed at that time were Defendant Cabral and Randall Humphreys. After passing those resolutions, Mr. Duquette remained the Company's CEO and kept this seat on the Board, while Mr. Czikmantori remained Secretary but resigned his Board membership.

35.    The newly expanded Board met a few days later and, upon information and belief, passed a resolution providing the Board members with an option to purchase one million shares of USAE common stock at $0.13 a share. Half of those options would vest one year from the resolution and the other half would vest a year later. The Board gave an additional option to purchase 5 million shares to Summit Trading, owned or controlled by Defendant Arnold,[2] in exchange for unspecified "investor relations" services. The Board also established Defendant Kirkland and his law firm, Defendant Luce, as outside counsel and, on or about April 19, 2010, changed New Century's name to U.S. Aerospace, Inc.

36.    Shortly thereafter, Defendant Kirkland spearheaded a transaction in which the Company sought to purchase Antonov USA from ADI and TUSA

---

[2]    Summit Trading Limited is a Bahamian holding company and is owned by the Weast Family Trust, a private irrevocable trust established for the benefit of Defendant Arnold, Daisy Rodriguez, Stephanie Kaye and Tracia Fields. Defendant Arnold is the settler of the Weast Family Trust, and his interest in Summit Trading Limited is approximately 80% of the value.

Acquisition Corporation ("TUSA"). Defendant Arnold's wife, Daisy Rodriguez, is the President and stockholder of TUSA. The supposed purpose of the transaction was for the Company to acquire Antonov USA's sole asset, its purported existing relationship with the Antonov Company, a Ukrainian state-owned company with the capacity to undertake large aeronautical manufacturing projects.

37.    On or about July 1, 2010, USAE purchased Antonov USA in exchange for an aggregate of 383,793 shares of Series E Convertible Preferred Stock with a par value of $1.00. Two-thirds of that stock was paid to ADI. Under the governing documents, the holders could convert each series E share into 500 shares of USAE common stock. The Series E voted together with the common stock as a single class on an as-converted basis, and the Series E benefitted from non-dilution protection. Given the number of circulating common shares, after the purchase of Antonov USA, the Series E holders, *i.e.*, ADI and TUSA, held the majority of voting shares in USAE.

38.    The same day as the Antonov USA purchase, USAE entered into a Strategic Cooperation Agreement with the Antonov Company.

39.    On July 6, 2010, the Company filed a report on Form 8-K with the SEC concerning a press release issued that same day announcing the Company's "Strategic Cooperation Agreement" with Antonov to bid on a Request for Proposal ("RFP") form the U.S Air Force for the KC-Y Tanker Modernization Program. The press release stated, in relevant part:

> LOS ANGELES—(BUSINESS WIRE)—U.S. Aerospace, Inc. (OTCBB: USAE), an aerospace and defense contractor, today announced that it has entered into a Strategic cooperation agreement with Antonov to bid on the request for proposal to supply 179 aerial refueling tankers to the U.S. Air Force.
>
> The airframes will be built in Ukraine by Antonov, with final assembly

at a new U.S. Aerospace, Inc. facility in the United States. The KC-X Tanker Modernization Program, expected to be the largest contract in Pentagon history, represents the first step of the strategic cooperation between Antonov and U.S. Aerospace, Inc. to supply and service aircraft to the U.S. military and commercial aircraft markets.

Antonov designed, built and operates the world's largest aircraft, the AN-225, which provides strategic airlift capabilities for the U.S. Department of Defense and others. Antonov and U.S. Aerospace, Inc. will bid three models for the KC-X program, the AN-124-KC, AN-122-KC, a twin-engine variant of the AN-124-100 with advanced engines, electronics and avionics, and AN-112-KC, an updated airframe designed specifically to meet the tanker program requirements.

"Antonov's participation in the U.S. Air Force tanker bid with U.S. Aerospace, Inc. is an historic opportunity for Antonov to showcase its premier design, engineering and manufacturing capabilities to the world," said Dmytro S. Kiva, President and General Designer of Antonov.   "We are extremely pleased to have entered into this agreement with U.S. Aerospace, Inc., and are looking forward to the long-term mutual benefits of our partnership."

"We are honored to be partnering with the world's premier designer and manufacturer of large transport aircraft," said Jerrold S. Pressman, Chairman of U.S. Aerospace, Inc. "We are particularly impressed by Mr. Kiva's strong leadership and vision for the future. Together we can deliver the U.S. Air Force a superior tanker at the most competitive price."

USAE, Current Report (Form 8-K), at Ex. 1 (July 6, 2010).

40.     On or about July 9, 2010, USAE submitted a response to the RFP, under which the aircraft components would have been built by Antonov Company in the Ukraine, with final assembly by USAE.  Since the U.S. Air Force denied the Company's request for an extension of the bidding deadline on July 8, 2010, the Company bid only one model of aircraft, the AN-112KC.

41.     The Boeing Company and The European Aeronautic Defense and Space Company N.V., also bid on the RFP utilizing existing wide body commercial airliners as the basis for their KC-X tanker proposals.  Both designs were advanced and well developed, and both companies invested considerable resources into designing their tankers and in preparing their responses to the RFP.  Both companies spent substantially more time, money and effort preparing their RFP responses than USAE did.

42.     Ultimately, the Air Force found USAE's bid untimely and failed to consider it.  On August 2, 2010, the Company submitted a bid protest to the General Accounting Office ("GAO").  On October 6, 2010, the GAO denied the Company's bid protest.  USAE and the Antonov Company have yet to submit a successful bid together, and, ultimately, the Company recorded an impairment charge equal to the net book value of the Strategic Cooperation Agreement with Antonov.

43.     On or about July 14, 2010, a company called Omnicom Holdings. Inc. ("Omnicom") filed a complaint against USAE alleging that in June 2010, USAE entered into an agreement with Omnicom to facilitate USAE's introduction to the Antonov Company (the "Omnicom Complaint").   Allegedly, the terms of the contract obligated USAE to pay a $1.5 million fee due within forty-eight hours after completion of a cooperation agreement between the Antonov Company and USAE, and another $1.5 million upon the consummation of a successful bid resulting from that agreement.  At the time, USAE had insufficient funds to pay that fee, and did not anticipate obtaining such a significant sum anytime soon thereafter. Defendant Kirkland was purported to have participated in negotiating the Omnicom agreement.

44.    According to Omnicom's allegations, the contract was memorialized by a single letter of acknowledgement, dated June 4, 2010, purportedly sent by Omnicom CEO, Mark Suleymanov, to Board member Jerrold Pressman, who, upon information and belief, was at the time and continues to be a client of Defendant Kirkland on other unrelated matters.  The Omnicom Complaint failed to allege any specific actions taken by Omnicom in performance of the alleged contract with USAE, much less explain why such actions constituted fair value for $3 million.

45.    Regardless, on July 15, 2010, *one day after the filing of the Omnicom Complaint*, Defendant Kirkland and Defendant Pressman entered into a settlement agreement with Omnicom on behalf of USAE.   The settlement was a "pre-packaged" transaction, agreed to even before the Complaint was filed, to facilitate the issuance of free-trading shares.  Under the terms of the settlement agreement, *which did not include a release from all future claims*, Omnicom received 15 million free-trading shares of USAE common stock.  At that time, 15 million shares of USAE common stock held a value of approximately $2.3 million.  The Omnicom settlement agreement was not submitted to the Company Board for approval before it was executed.[3]

46.    On or about August 11, 2010, USAE's Board of Directors post-hoc ratified the Omnicom settlement agreement and Defendant Kirkland's role in

_____

[3]    The Company's Form 10-Q/A for the period ending June 30, 2010, dated September 13, 2010, filed with the SEC discloses:

On August 20, 2010, we instructed our transfer agent to issue 5 million shares and agreed to issue an additional 10 million shares to Omnicom Holdings pursuant to a stipulated settlement in an action filed by Omnicom for a $1.5 million commission claimed due in connection with our agreement with Antonov.  The issuance was exempt from registration pursuant to Section 3(a)(10) of the Securities Act as an issuance approved by a court after a hearing upon the fairness of its terms and conditions.

USAE, Quarterly Report (Form 10-Q/A), at F-22 (September 13, 2010).

approving the settlement.   In that same resolution, the Board accepted Mr. Duquette's resignation as CEO and as a Board member, effective August 16, 2010, and appointed James Worsham to the Board and as the Company's new CEO, effective September 29, 2010.  Mr. Czikmantori also resigned as Secretary effective August 16, 2010.  Defendant Cabral was appointed President effective August 23, 2010.

47.    Following the Omnicom settlement, 4.55 million shares of stock initially issued to Omnicom were then reissued to a number of other entities, including Zynatech, Aegis Capital, Adanta Partners, Omnivest Holdings, Net Gen, Oceanic Consulting, Insight Capital Consultants and James Meagher at the direction of Tom Biggs and Dick Fixaris, employees of Defendant Arnold.  At least one of those companies had a pre-existing relationship with USAE.

48.    The Company's report on Form 10-Q for the period ending September 30, 2010 reported,

> Operating loss for the three and nine months ended September 30, 2010, was $12,156,947 and $14,235,297 compared to $66,166 and $108,525 for the three and nine months ended September 30, 2009. ***The increase in loss of $12,090,781 and $14,126,772, respectively, is primarily due to the impairment charge for the Strategic Cooperation Agreement***, the acquisition of PAI, the reclassification of NCR as a discontinued operation ***and due to increased consulting services for new aerospace marketing and service contracts***.

USAE, Quarterly Report (Form 10-Q), at *4 (December 16, 2010) (emphasis added).   The 10-Q goes on to report that $11,513,790 of this loss for the nine months ended September 30, 2010 was due to a "non-cash expense for impairment of an intangible asset", that $319,319 of the loss was from "stock issued for services," and  another $1,500,000 of the loss was due to "stock issued for the settlement of a liability...."

49.     By December 2010, USAE required further financing to remain a going concern.  The sole potential funding offer to USAE came from the same New York-based asset management firm that had extended credit, as discussed above.   The tentative proposed terms were beneficial to the Company, but required the Company to terminate the rights of the Series E holders in order to encourage further investment by market participants who otherwise would shy away from a company controlled by the Series E holders.

50.     When informed of the proposed lender's terms, Defendant Kirkland unilaterally rejected the proposed funding on behalf of the Company.   Further, Defendant Kirkland asserted that he would prefer placing the Company into bankruptcy rather than accept the funding under the premise that the Series E holders could emerge from the proceedings owning a shell company containing the necessary licenses to enter into government contracts as well as the cooperation agreement with the Antonov Company.

51.     Defendant Kirkland attempted to effect this purported rejection without consulting with the Board or the Company's CEO, Mr. Worsham.   The Company's financial situation has become increasingly precarious.   Evidently, Defendant Kirkland and the Series E holders are in fact resigned to placing the Company in bankruptcy.   Mr. Worsham and the Company, however, believe that with financing, USAE can avoid bankruptcy, become profitable, and protect the interests of the common shareholders and USAE's creditors.

52.     On January 27, 2011, Mr. Worsham was removed, without cause, from USAE's Board.

53.     On January 28, 2011, the Company filed form 15-12G with the SEC to deregister its stock.  It reported a net loss for the quarter ended September 30, 2010, of $11.5 million on revenue of $660,144.

54.     By the actions alleged herein, Defendant Kirkland and, vicariously, Defendant Luce violated their professional responsibilities and fiduciary duties

owed to USAE as USAE's outside general counsel.  Defendant Kirkland has consistently placed his own interests and the objectives of other individuals before those of his client and acted well beyond the scope of his authority.  Defendant Kirkland also violated his fiduciary duties of loyalty, good faith and care to the Company and aided and abetted similar breaches of duty by the Director Defendants and the Majority Shareholders.

55.    The Director Defendants have similarly breached their fiduciary duties of care and loyalty and have aided and abetted Defendants Kirkland and Luce's breaches of fiduciary duty.   The Director Defendants have abdicated their responsibility to adequately monitor USAE's business dealings and oversee Defendants Kirkland and Luce.

56.    Further, the Majority Shareholders, ADI and TUSA, which control a majority of the USAE Board, have breached and continue to breach their fiduciary duties owed to the Company and the minority shareholders by insisting that the Company be placed into bankruptcy rather than accept financing which could allow the Company to become profitable and protect the interests of the common shareholders and USAE's creditors.

57.    Defendant Arnold has aided and abetted each of the foregoing breaches of fiduciary duty by Defendants Kirkland and Luce, the Director Defendants and the Majority Shareholder Defendants.

## V.    DERIVATIVE ACTION AND DEMAND EXCUSED ALLEGATIONS

58.    Plaintiffs bring this action derivatively, in the right and for the benefit of the Company, to redress Defendants' breaches of fiduciary duties, and Defendants Kirkland and Luce's legal malpractice.

59.    Plaintiffs are owners of USAE common stock and were owners of USAE common stock at all relevant times hereto.

60.    Plaintiffs will adequately and fairly represent the interests of the Company and its shareholders in enforcing and prosecuting its rights.

61.   As a result of the facts set forth herein, Plaintiffs have not made any demand on the Board to institute this action against Defendants.   Such demand would be a futile and useless act because a majority of the members of the Board are incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

62.   Upon information and belief, at this time the Board consists of the five Director Defendants:   Cabral, Goldberg, Henderson, Koock and Pressman. Defendants Goldberg, Henderson, Koock and Pressman were each hand-picked by Defendant Kirkland at the direction of Defendant ADI, a majority shareholder of the Company.   Defendant ADI owns two-thirds of the Series E Convertible Preferred Stock of the Company.   Together with TUSA, ADI owns a majority of the voting shares in USAE.   Therefore, a majority of the Board is conflicted and entangled with and controlled and dominated by Defendants Kirkland, Luce and ADI, preventing them from fairly considering, let alone taking, all necessary and proper action on the Company's behalf.

63.   Demand is also excused because the underlying transactions complained of herein were not and could not have been the product of a valid exercise of business judgment.

64.   Demand is also excused because the wrongs alleged herein constitute violations of the fiduciary duties owed by the Director Defendants and are incapable of ratification by the current Board.   The Director Defendants are subject to liability for breaching their fiduciary duties to USAE and aiding and abetting breaches of fiduciary duty by the other defendants by, *inter alia*, failing to adequately monitor USAE's business dealings and oversee Defendants Kirkland and Luce.

## COUNT I
### Against Defendants Kirkland and Luce for Legal Malpractice

65.   Plaintiffs reallege the foregoing paragraphs as though fully set forth herein.

66.   By accepting his position as USAE's outside general counsel, Defendant Kirkland obligated himself to "conform his … representation to the concept that the client is the organization itself, acting through its highest authorized officer, employee, body, or constituent overseeing the particular engagement." Cal. Rules Prof'l Conduct R. 3-600; *see also* Model Rules Prof'l Conduct R. 1.2 ("[A] lawyer shall abide by a client's decisions concerning the objectives of representation and, as required by Rule 1.4, shall consult with the client as to the means by which they are to be pursued.")  Defendant Kirkland, however, consistently placed the objectives of the Series E holders, *i.e.*, ADI, TUSA and their affiliates, before the well-being of the Company, in violation of his ethical duties.

67.   Defendant Kirkland's continued representation and/or affiliation with ADI and its interests constituted conflicts which should have precluded him from representing the Company.   Defendant Kirkland cannot ethically allow his representation of the Company to be directed by a client with adverse interests. Defendant Kirkland's loyalty to the Series E holders rather than to the Company has caused, and continues to cause, USAE significant material harm.   For example, Defendant Kirkland, acting at the behest of ADI, prevented the Company from considering essential funding offered by Centrecourt because its terms included the limitation of the Series E stock.   Defendant Kirkland's preference for placing the Company into bankruptcy under the theory that the Series E holders would emerge as the owners of important USAE assets further underscores this conflict.

68.   The California Bar Association, of which Defendant Kirkland is a member, proscribes the continued representation of a client in the face of such a conflict. *See* Cal. Rules of Prof'l Conduct, Rule 3-310(C) ("A member shall not, without the informed written consent of each client:  (1) Accept representation of more than one client in a matter in which the interests of the clients potentially conflict; or (2) Accept or continue representation of more than one client in a matter in which the interests of the clients actually conflict….").  Defendant Kirkland never

provided the Company with notice of his existing conflict.  Even so, such notice and consent could not absolve Defendant Kirkland of his ethical duty to pursue his client's objectives rather than those of another.

69.   Defendant Kirkland similarly violated California Rules of Professional Conduct, Rule 3-310(B), which states that "[a] member [of the Bar] shall not accept or continue representation of a client without providing written disclosure to the client where: … .  (3) [t]he member has or had a legal, business, financial, professional, or personal relationship with another person or entity the member knows or reasonably should know would be affected substantially by resolution of the matter; or (4) [t]he member has or had a legal, business, financial, or professional interest in the subject matter of the representation."  *See also* Model Rules of Prof'l Conduct R. 1.7 ("a lawyer shall not represent a client if the representation involves a concurrent conflict of interest").  Defendant Kirkland never attempted to provide such disclosure to the Company, which in any event would have been inadequate.

70.   Defendant Kirkland's professional relationship with ADI obligated him to discontinue his representation of the Company.  Under California Rules of Professional Conduct, Rule 3-300, "[a] member shall not enter into a business transaction with a client; or knowingly acquire an ownership, possessory, security, or other pecuniary interest adverse to a client…."

71.   The California Rules of Professional Conduct prohibited Defendant Kirkland from participating in USAE's purchase of Antonov USA.  In that transaction, Defendant Kirkland did disclose his conflict to the Board, which purported to waive any such conflict on behalf of the Company.  However, even if the Board were empowered to waive a conflict regarding the Company's counsel, the majority of the Board members were appointed by ADI and therefore were hopelessly conflicted in the transaction.  The interested directors should have recused themselves from participating in the vote.  Moreover, the purchase involved

1    the effective sale of control over the Company to another of Defendant Kirkland's

2    clients and/or related parties.  Defendant Kirkland therefore should not have asked

3    for, or accepted, a waiver concerning such a clear conflict.  Instead, he should have

4    advised his client to obtain separate counsel to explore whether the transaction

5    benefitted the Company and its shareholders, or just ADI and the ADI-appointed

6    Board members.

7         72.    Defendant Kirkland also breached his ethical duties by failing to

8    consult or take direction from his client on important matters.  Defendant Kirkland

9    adopted a role beyond that of outside general counsel by immersing himself in the

10   day-to-day management of the Company at ADI's behest.  In the context of the

11   funding offer, it was beyond Defendant Kirkland's duties as general counsel to take

12   action without direction from the Company through its highest authorized officer,

13   James Worsham.  *See* Cal. Rules of Prof'l Conduct, Rule 3-600.  After receiving

14   such direction, Mr. Kirkland should have vigorously defended USAE's position,

15   whether or not he agreed with it, rather than promoting the position of the Series E

16   holders.

17        73.    Defendant Kirkland also violated his ethical duties by failing to inform

18   the Company about the Omnicom settlement offer, let alone seek direction regarding

19   whether the offer was sufficiently advantageous.  *See* Cal. Rules of Prof'l Conduct,

20   Rule 3-510.

21                           **COUNT II**

22   **Against Defendants Kirkland and Luce, the Director Defendants and the
     Majority Shareholder Defendants for Breach of Fiduciary Duty and Aiding
23   and Abetting; and Against Defendant Arnold for Aiding and Abetting**

24        74.    Plaintiffs reallege the foregoing paragraphs as though fully set forth

25   herein.

26        75.    Defendants agreed to and did participate with and/or aided and abetted

27   one another in a deliberate course of action designed to divert corporate assets in

28   breach of fiduciary duties they owed to the Company.

76.     Defendants have violated fiduciary duties of care, loyalty, good faith, and independence owed to USAE and its public shareholders, have engaged in unlawful self-dealing and have acted to put their personal interest and/or their colleagues' interests ahead of the interests of USAE and its shareholders.

77.     Defendants Kirkland and Luce owed a fiduciary duty to USAE stemming from Defendant Kirkland's position as outside general counsel and from his activities in managing the Company's operations. Defendant Kirkland assumed an affirmative duty to protect the interest of the Corporation, but also an obligation to refrain from conduct which would injure the corporation and its stockholders or deprive them of profit or advantage.

78.     The Director Defendants at all relevant times owed a duty of loyalty to USAE and its shareholders, including a duty to be independent and motivated by neither self-interest nor ill will. The Director Defendants breached this duty.

79.     The Director Defendants at all times placed their own interests and interests of outside parties before the interests of USAE and its shareholders. The Director Defendants approved and/or ratified the transactions that resulted in the transfer of significant numbers of shares to the Majority Shareholder Defendants for inadequate consideration to USAE.

80.     The Director Defendants gave Summit Trading, a company controlled by Defendant Arnold, an option to purchase 5 million shares of USAE for no consideration to USAE.

81.     The Director Defendants approved and/or ratified the sham settlement with Omnicom that resulted in millions of shares of USAE being transferred to outside parties for no consideration to USAE.

82.     The Director Defendants approved and/or ratified Defendant Kirkland's decision to reject crucial financing needed to keep USAE a going concern, thereby approving and/or ratifying, or taking no action to prevent actions that placed USAE in imminent danger of insolvency.

1    83.    The Majority Shareholder Defendants at all times placed their own
2  interests and interests of outside parties before the interests of the minority
3  shareholders.

4    84.    Defendant Arnold aided and abetted the foregoing breaches of fiduciary
5  duties.  Defendant Arnold had actual knowledge of all of Defendant Kirkland's and
6  the Director Defendant's breaches of fiduciary duty.  Defendant Arnold, along with
7  Defendant Kirkland, misrepresented to the Company that Defendants Arnold and
8  Kirkland owned certain USAE debt which was actually owed by Centrecourt.

9    85.    Defendant Arnold, along with Defendant Kirkland and at the behest of
10  ADI, directed the Company to expand the Board and to appoint four of the Director
11  Defendants to the USAE Board.  The Director Defendants installed by Defendant
12  Arnold then granted Defendant Arnold's company, Summit Trading, an option to
13  purchase 5 million shares of USAE for no consideration.

14    86.    Defendant Arnold also assisted in engineering a transaction in which
15  USAE purchased Antonov USA from ADI and TUSA, resulting in ADI and TUSA
16  owning the majority of the voting shares in USAE.  Defendant Arnold's wife is the
17  President of TUSA.  Defendant Arnold knew that Defendant Kirkland was placing
18  his interests and those of the Majority Shareholder Defendants above those of USAE
19  and its common shareholders and knew that USAE was to receive inadequate
20  consideration for the transaction.

21    87.    Finally, Defendant Arnold had actual knowledge that Defendant
22  Kirkland and Defendant Pressman engineered the sham settlement with Omnicom.
23  Defendant Arnold directed his employees to re-issue a substantial portion of the
24  stock issued to Omnicom to a series of other entities.

25    88.    As a proximate result of Defendants' conduct, USAE has been injured
26  and is entitled to damages.

27
28

## COUNT III
### Against Defendants Kirkland and Luce and the Director Defendants for Corporate Waste

89.     Plaintiffs reallege the foregoing paragraphs as though fully set forth herein.

90.     Corporate waste is defined as an exchange of corporate assets for consideration so disproportionately small as to lie beyond the range at which any reasonable person might be willing to trade.

91.     There was no substantial consideration received by the Company in exchange for the Series E Convertible Preferred Stock issued to ADI and TUSA.

92.     There was no substantial consideration received by the Company in exchange for the shares issued to Omnicom in connection with the Omnicom settlement.

93.     There was no substantial consideration received by the Company in exchange for the option to purchase 5 million shares of USAE granted to Summit Trading, a company controlled by Defendant Arnold.

94.     Under the circumstances, no reasonable business person could conclude that the aforementioned transactions were worthwhile for the Company and in the Company's best interests.

95.     Defendants Kirkland and Luce and the Director Defendants are therefore guilty of committing corporate waste and are liable to the Company for all damages sustained thereby.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment as follows:

A.     Against all of the Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of Defendants' misconduct;

B.     Granting appropriate equitable relief to remedy Defendants' breaches of fiduciary duties;

1        C.     Awarding to Plaintiffs, the costs and disbursements of the action,

2   including reasonable attorneys' fees, experts' fees, costs, and expenses; and

3        D.     Granting such other and further relief as the Court deems just and

4   proper.

## JURY TRIAL DEMAND

     Plaintiffs demand a trial by jury.

DATED: May ___, 2011

         WOLF HALDENSTEIN ADLER
          FREEMAN & HERZ LLP
         Francis M. Gregorek
         Betsy C. Manifold
         Rachele R. Rickert
         Patrick H. Moran

         Rachele R. Rickert

         750 B Street, Suite 2770
         San Diego, CA 92101
         Telephone:  619/239-4599
         Facsimile:  619/234-4599
         gregorek@whafh.com
         manifold@whafh.com
         rickert@whafh.com
         moran@whafh.com

         Attorneys for Plaintiffs

USAE:18078.CPT

- 25 -

<div align="center">VERIFICATION</div>

I, David L. Defrees, am a party to this action.  I hereby verify that I have read the foregoing Verified Derivative Complaint, know its contents and authorized its filing.  The matters stated in the Verified Derivative Complaint are true based on my own knowledge, except as to those matters stated on information and belief, and as to those matters I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.


DATE: May _13_ , 2011                  _____

                                       DAVID L. DEFREES

<u>VERIFICATION</u>

I, Simon Gershon, am a party to this action. I hereby verify that I have read the foregoing Verified Derivative Complaint, know its contents and authorized its filing. The matters stated in the Verified Derivative Complaint are true based on my own knowledge, except as to those matters stated on information and belief, and as to those matters I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

DATE: May __/5__, 2011

_____

SIMON GERSHON

## VERIFICATION

I, Frederick Rich, am a party to this action. I hereby verify that I have read the foregoing Verified Derivative Complaint, know its contents and authorized its filing. The matters stated in the Verified Derivative Complaint are true based on my own knowledge, except as to those matters stated on information and belief, and as to those matters I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

DATE: May _17_, 2011

FREDERICK RICH