1  FRANCIS M. GREGOREK (144785)
   gregorek@whafh.com
2  BETSY C. MANIFOLD (182450)
   manifold@whafh.com
3  RACHELE R. RICKERT (190634)
   rickert@whafh.com
4  MARISA C. LIVESAY (223247)
   livesay@whafh.com
5  WOLF HALDENSTEIN ADLER
     FREEMAN & HERZ LLP
6  750 B Street, Suite 2770
   San Diego, CA 92101
7  Telephone: 619/239-4599
   Facsimile:  619/234-4599
8

9  Attorneys for Plaintiff

10

11              UNITED STATES DISTRICT COURT
                CENTRAL DISTRICT OF CALIFORNIA
12

13  FREDERICK RICH, in the right of and      )  Case No. CV 11-04272 GAF(SPx)
    for the benefit of U.S. Aerospace, Inc.   )
14                                            )
                 Plaintiff,                   )
15                                            )  **VERIFIED SECOND AMENDED**
          v.                                  )  **DERIVATIVE COMPLAINT**
16                                            )
    JOHN C. KIRKLAND,                         )
17  LUCE, FORWARD, HAMILTON &                 )  **JURY TRIAL DEMANDED**
    SCRIPPS LLP,                              )
18  JERROLD S. PRESSMAN,                      )
    KENNETH J. KOOCK,                         )
19  MICHAEL L. GOLDBERG,                      )
    JAMES D. HENDERSON,                       )
20  HAL KOLKER,                               )
    CHARLES S. ARNOLD,                        )
21  TUSA ACQUISITION CORPORATION,             )
    AMERICAN DEFENSE                          )
22  INVESTMENTS, LLC and                      )
    DOES 1 through 10,                        )
23                                            )
                 Defendants,                  )
24           and                              )
                                              )
25  U.S. AEROSPACE, INC.                      )
                                              )
26               Nominal Defendant.           )
                                              )
27  _____    )

28

Plaintiff Frederick Rich ("Plaintiff"), by and through his attorneys, derivatively on behalf of U.S. Aerospace, Inc. ("USAE" or the "Company"), alleges upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through their attorneys, which included, among other things, a review of Company filings with the Securities and Exchange Commission ("SEC"), news reports, press releases, and other publicly available documents regarding the Company and the Defendants, as follows:

## I.   NATURE OF THE ACTION

1.     Plaintiff, derivatively on behalf of Nominal Defendant USAE, seeks relief for the damages sustained and to be sustained by the Company for wrongdoing committed between April 1, 2010 and the present (the "Relevant Period") against:

      a.    John C. Kirkland ("Kirkland") and Luce, Forward, Hamilton & Scripps LLP ("Luce")[1] for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, legal malpractice and corporate waste;

      b.    Hal Kolker, the sole member of the USAE Board of Directors (the "Board") at the date of the filing of the initial complaint in this action on May 18, 2011, for breach of fiduciary duty;

      c.    certain former members of USAE's Board, Jerrold S. Pressman ("Pressman"), Kenneth J. Koock ("Koock"), Michael L. Goldberg ("Goldberg"), and James D. Henderson ("Henderson") (collectively, the "Former Director Defendants"), for breach of fiduciary duty and corporate waste;

---

[1]     In March of 2012, the Luce firm was acquired by McKenna Long & Aldridge LLP.

-1-

d.    the holders of USAE's Series E Preferred Stock, TUSA Acquisition Corp. ("TUSA") and American Defense Investments, LLC ("ADI") (the "Majority Shareholder Defendants"), for breach of fiduciary duty; and

e.    Charles S. Arnold ("Arnold") for aiding and abetting breach of fiduciary duty.[2]

2.    By the acts alleged herein, Defendant Kirkland has violated numerous provisions of the California Rules of Professional Conduct, ignored irreparable and unwaivable conflicts between his client USAE and ADI, and subsumed his obligations to USAE in favor of the interests of ADI and the other Series E preferred shareholders.

3.    The Former Director Defendants, which were hand-picked by Majority Shareholder Defendant ADI, breached their fiduciary duties by purporting to ratify Kirkland's wrongful conduct to the detriment of the Company and committed corporate waste by permitting the Company to issue millions of shares of Company stock to the Majority Shareholder Defendants without meaningful consideration, and by permitting millions of shares to be issued to purported "consultants", Omnicom Holdings, Inc. ("Omnicom") and Summit Trading, without meaningful consideration.  As active participants in the alleged fraudulent acts alleged herein, any litigation demand made on the Former Director Defendants pursuant to Rule 23.1 of the Rules of the Court of Chancery of the State of Delaware ("Chancery Court Rules") would have been futile.

4.    Moreover, the Majority Shareholder Defendants, ADI and TUSA, which control a majority of the USAE Board, have breached and continue to breach their fiduciary duties owed to the Company and the minority shareholders by insisting that the Company be placed into bankruptcy rather than accept financing,

---

[2]    Defendants Kirkland, Luce, Kolker, Pressman, Koock, Goldberg, Henderson, TUSA, ADI and Arnold are collectively referred to herein as the "Defendants."

1   which could allow the Company to become profitable under the premise that the

2   Majority Shareholder Defendants could emerge from the proceedings owning a shell

3   company containing the necessary licenses to enter into government contracts and

4   other valuable Company assets.

5        5.     Also, Defendant Arnold has aided and abetted the aforementioned

6   breaches of fiduciary duty by Defendants Kirkland and Luce, the Former Director

7   Defendants and the Majority Shareholder Defendants by, among other things,

8   misrepresenting to the Company that he and Defendant Kirkland owned USAE debt

9   which was actually owned by another party.   Defendant Arnold, along with

10  Defendant Kirkland, then directed the Company to expand the Board and to appoint

11  four of the Former Director Defendants to the USAE Board.  The Former Director

12  Defendants then granted Arnold's company, Summit Trading, an option to purchase

13  5 million shares of USAE for no consideration.  Defendant Arnold also participated

14  in engineering a transaction which resulted in Defendants ADI and TUSA owning

15  the majority of USAE's voting shares.  Defendant Arnold's wife is the President and

16  shareholder of TUSA.  Finally, after Defendants Kirkland and Pressman engineered

17  a sham settlement with Omnicom whereby Omnicom was issued 15 million shares

18  of Company stock worth $2.3 million without consideration to the Company,

19  Defendant Arnold directed his employees to re-issue 4.5 million of those shares to a

20  series of other entities.

21       6.     Finally, Defendant Kolker, the only member of the USAE Board at the

22  time of the initial filing of this action, May 18, 2011, was brought in to represent the

23  interests of, and be beholden to, Kirkland, Arnold and the other Defendants

24  following the resignation and/or termination of the other Board members when the

25  wrongdoing described herein was brought to light.  Indeed, Defendants Arnold and

26  Kirkland initially introduced Defendant Kolker to USAE in early 2010 in order that

27  Defendant Kolker might provide financing to the Company.  Defendants Arnold and

28  Kirkland represented to USAE's then Chief Executive Officer, David Duquette, that

1  Defendant Kolker had previously engaged in a number of business deals with
2  Arnold and Kirkland.  While he did not invest in the Company at that time, Arnold
3  and Kirkland turned to him in March of 2011 in order to ensure that their interests
4  would be protected.

5        7.    Defendant Kolker signed, purportedly on April 29, 2011, and
6  purportedly on behalf of USAE, documents entitled, "Mutual General Release" in
7  an attempt to release Defendants Arnold, Goldberg, Henderson, and Koock from
8  any and all liability for claims the Company has against them.  Kolker also signed
9  similar documents, purportedly on behalf of USAE, titled, "Settlement Agreement
10  and Release" in an attempt to  release Defendants ADI and TUSA from liability for
11  any and all claims the Company has against them.  Any litigation demand made on
12  Defendant Kolker pursuant to Rule 23.1 of the Chancery Court Rules would have
13  been futile given the fact that: (a) Defendant Kolker had prior business and personal
14  dealings with other Defendants, including Defendants Arnold and Kirkland, and
15  therefore was not and is not independent; and (b) Defendant Kolker's actions while
16  serving as the solitary Board member of USAE, including the signing of the
17  Releases, demonstrate that he was beholden to the Defendants.

18
19  ## II.    JURISDICTION AND VENUE

20        8.    This Court has jurisdiction over this action pursuant to 28 U.S.C.
21  §1332(a)(1) in that Plaintiff and Defendants are citizens of different states and the
22  matter in controversy exceeds $75,000, exclusive of interests and costs.  This action
23  is not a collusive action designed to confer jurisdiction on a court of the United
24  States that it would not otherwise have.

25        9.    Venue is proper in this Judicial District pursuant to 28 U.S.C.
26  §1391(b)(2) because a substantial portion of the events or omissions giving rise to
27  the claims alleged herein occurred within this Judicial District.  Moreover,
28  Defendants have received substantial payments in this Judicial District by doing

1  business here and engaging in numerous activities that had an effect in this Judicial
2  District.

4                          **III.   PARTIES**

5  **A.    The Plaintiff**

6         10.     Plaintiff **Frederick Rich** is a citizen of the United States of America, is
7  domiciled in Tomball, Texas and has owned at all times relevant to this action, and
8  continues to own, the Company's common stock.

9  **B.    The Nominal Defendant**

10        11.     Nominal Defendant **U.S. Aerospace, Inc.** ("USAE" or the
11 "Company"), formerly known as New Century Companies, Inc. ("New Century"),
12 was incorporated in the state of Delaware on August 1, 1980 and headquartered at
13 10291 Trademark Avenue, Rancho Cucamonga, California, County of San
14 Bernardino 91730.

15        12.     On October 9, 2009, New Century entered into a share exchange
16 agreement with Precision Aerostructures, Inc. ("PAI") pursuant to which the
17 President and sole shareholder of PAI, Michael C. Cabral, agreed to transfer all
18 capital stock of PAI to New Century.   USAE operates through PAI.   USAE's
19 common stock is quoted on the Over-the-Counter Bulletin Board ("OTC Bulletin
20 Board") under the symbol "USAE".   On or about April 19, 2010, the Company
21 changed its name from New Century Companies, Inc. to U.S. Aerospace, Inc.

22        13.     USAE is an aerospace and defense contractor engaged in the
23 production of aircraft assemblies, structural components, and highly engineered,
24 precision machined details for the United States Department of Defense, United
25 States Air Force, Lockheed Martin Corporation, The Boeing Company, L-3
26 Communications Holdings, Inc., the Middle River Aircraft Systems subsidiary of
27 General Electric Company, and other aircraft manufacturers, aerospace companies,
28 and defense contractors.   The Company supplies structural aircraft parts for military

1    aircraft such as the P-3 Orion, and wide-body commercial airliners such as the
2    Boeing 747.

3    **C.      Defendants Kirkland And Luce, Forward, Hamilton & Scripps LLP**

4           14.     Defendant **John C. Kirkland** is a citizen of the United States of
5    America, is domiciled in California, is an attorney admitted to practice law in the
6    State of California, at the time of the filing of this action, was "Of Counsel" with
7    Defendant Luce and worked from the firm's Los Angeles office.  From on or about
8    February 18, 2009 to March 5, 2011, Defendant Kirkland was a partner of
9    Defendant Luce.  Defendant Kirkland left Luce shortly after the filing of this action.
10   During the Relevant Time Period, Defendant Kirkland and his law firm, Luce,
11   served as outside legal counsel to USAE.  Defendant Kirkland has been a member
12   of or associated with at least half a dozen law firms during his legal career,
13   including: (1) Defendant Luce; (2) Dreier Stein Kahan Browne Woods George; (3)
14   Lowenstein, Sandler LLP; (4) Greenberg Traurig; LLP; (5) Weissmann Wolff
15   Bergman Coleman Grodin & Evall LLP; and (6) Cadwalader Wickersham & Taft
16   LLP.  He is also currently the Managing Director at Ironridge Global Partners.

17          15.     While a partner at Greenberg Traurig LLP, Defendant Kirkland and the
18   firm were named in a $50 million civil suit filed by a mail-order food marketing
19   company, GreatMeals, USA, Inc. ("GreatMeals"), against former boxing champion
20   George Foreman over a failed steak venture.   The suit claimed that Kirkland
21   conspired with Foreman to transfer control of certain business opportunities to
22   Kirkland's brother, Victor Kirkland.   GreatMeals also alleged that the defendants
23   acted with fraud and malice in an attempt to put it out of business by interfering with
24   a valuable contract between GreatMeals and Home Shopping Network.

25          16.     Defendant Kirkland joined Defendant Luce in 2009 after leaving Dreier
26   Stein Kahan Browne Woods George in Los Angeles, an affiliate of Dreier LLP that
27   broke up in January 2009 after Marc Dreier was charged with impersonating an in-
28   house lawyer at a Canadian pension fund.  Dreier pleaded guilty to selling more than

1   $700 million in fictitious real estate development notes and fake pension plan notes.

2   The elaborate four-year scheme, which netted roughly $400 million, led to the

3   implosion of Dreier's 250-attorney firm, Dreier LLP, and its affiliates, including

4   Dreier Stein Kahan Browne Woods George.  Defendant Kirkland was one of two

5   former partners from Dreier LLP subpoenaed by the firm's liquidating trustee in

6   May 2009. The Dreier bankruptcy trustee stated in court documents that he

7   suspected Kirkland may be essentially engaging in misappropriation and fraud.  The

8   trustee stated:  "With his new firm [Luce], Mr. Kirkland may even be directing

9   [former Dreier] clients to pay [Luce] instead of [Dreier]."  In his efforts to marshal

10  assets for the estate, the bankruptcy trustee obtained a court order to examine

11  Kirkland under oath.   The bankruptcy court also issued a subpoena to Luce's

12  managing partner, ordering the firm to produce documents relating to the Dreier

13  bankruptcy.

14          17.    At the time of the filing of this action, Defendant **Luce, Forward,**

15  **Hamilton & Scripps LLP** ("Luce") was a limited liability partnership doing

16  business in California, with offices located in San Diego, San Francisco, Los

17  Angeles, Orange County, Carmel Valley and Rancho Santa Fe.  At the time of the

18  initiation of this action, each of Luce's ninety-one partners was a citizen of the

19  United States of America and was domiciled in California.  Luce was, therefore, a

20  citizen of California.  On March 6, 2012, Defendant Luce merged with McKenna

21  Long & Aldridge LLP, and is now known by and rendering professional services

22  under the name McKenna Long & Aldridge LLP.

23          18.    At the time of the filing of this action, Luce's firm website stated:

24  "Luce Forward's dynamic practice is home to attorneys working in major business

25  centers throughout California.  We are known as a top law firm throughout the state

26  and represent clients from across the country.  For over 135 years, our mission and

27  values have been our guide."  Luce's mission included "[d]eliver[ing] dedicated

28  service at a value that larger firms cannot provide" and "[e]xceed[ing] the high

expectations of sophisticated clients."  Luce's values included "[t]eamwork, loyalty, trust, communication and mutual support."

**D.**     **The Former Director Defendants**

19.     Defendant **Jerrold S. Pressman** is a citizen of the United States of America, is domiciled in California and has been a member and Chairman of the USAE Board since April 5, 2010.  The principals of ADI directed Defendant Kirkland and Defendant Charles S. Arnold to select Defendant Pressman as a Board member.  Defendant Pressman was Defendant Kirkland's client during all relevant times on unrelated matters.  In or about April 2010, Defendant Pressman received an option to purchase 1 million shares of USAE stock.

20.     Defendant **Kenneth J. Koock** is a citizen of the United States of America, is domiciled in New Jersey and has been a Director of USAE since April 5, 2010. The principals of ADI directed Defendants Kirkland and Arnold to select Defendant Koock as a Board member.  In or about April 2010, Defendant Koock received an option to purchase 1 million shares of USAE stock.

21.     Defendant **Michael L. Goldberg** is a citizen of the United States of America, is domiciled in Florida and has been a Director of USAE since April 5, 2010.  The principals of ADI directed Defendants Kirkland and Arnold to select Defendant Goldberg as a Board member.  In or about April 2010, Defendant Goldberg received an option to purchase 1 million shares of USAE stock.

22.     Defendant **James D. Henderson** is a citizen of the United States of America, is domiciled in California and has been a Director of USAE since April 5, 2010.  The principals of ADI directed Defendants Kirkland and Arnold to select Defendant Henderson as a Board member.  In or about April 2010, Defendant Henderson received an option to purchase 1 million shares of USAE stock.

23.     Defendants Pressman, Koock, Goldberg, and Henderson are sometimes collectively referred to herein as the "Former Director Defendants."

**E.     Defendant Hal Kolker**

24.     Defendant **Hal Kolker** was appointed to the USAE Board on March 16, 2011 and was the sole member of the Board upon the filing of the initial complaint in this action on May 18, 2011.  Defendant Kolker is a citizen of the United States of America and is domiciled in California.

**F.     Defendant Charles S. Arnold**

25.     Defendant **Charles S. Arnold** is a citizen of the United States of America, is domiciled in Florida and is a principal of Summit Trading Limited. Defendant Arnold and Defendant TUSA share the same address:  520 Brickell Key Drive, Suite 1607, Miami, Florida 33131.

26.     Upon information and belief, Defendant Arnold has a pattern and practice of entering into stock promotion contracts with penny stock companies in return for a substantial amount of stock in the company.  He, along with others, publishes or promotes positive stories about those fledgling companies and is then able to reap a windfall when the positive stories spur investors to drive these stock prices higher.

27.     On May 21, 2002, a federal grand jury returned an Indictment charging Defendant Arnold and others with one count of wire, mail and securities fraud conspiracy, in violation of 18 U.S.C. § 371, thirteen counts of wire fraud, in violation of 18 U.S.C. §§ 1343 and 1346, one count of mail fraud, in violation of 18 U.S.C. §§ 1341 and 1346, and one count of securities fraud, in violation of 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5.  Defendant Arnold was a stock promoter and a controlling shareholder of a company named A1 International, Inc. ("AWON"), the common stock of which was publicly traded on the over-the-counter market.  According to the Indictment, Defendant Arnold and others agreed to pay an approximately $2.5 million undisclosed kickback to a confidential informant for the FBI and others to induce a fictitious foreign mutual fund to buy

1   approximately 4 million shares of overpriced AWON stock for a total of $8 million.

2   Defendant Arnold, however, was ultimately acquitted.

3   **G.     The Majority Shareholder Defendants**

4   28.     **Defendant TUSA Acquisition Corp. ("TUSA")**, at the time of the

5   filing of this action, was a holder of 127,931 shares of USAE Series E Preferred

6   Stock, each of which was convertible into 500 shares of USAE common stock.

7   TUSA is incorporated in Delaware and its principle place of business is located

8   (with Defendant Arnold) at 520 Brickell Key Drive, #1607, Miami, Florida 33131.

9   TUSA's President and stockholder is Daisy Rodriguez, Defendant Arnold's wife.

10   29.     Defendant **American Defense Investments, LLC ("ADI")**, at the time

11   of the filing of this action, held 255,862 shares of USAE Series E Preferred Stock,

12   each of which was convertible into 500 shares of USAE common stock.  ADI is

13   incorporated in Delaware and its principle place of business is located at 1301 South

14   75th Street, Suite 100, Omaha, Nebraska 68124.  ADI's Managing Director and only

15   member is Richard N. Berkshire of Berkshire & Burmeister, located at 1301 South

16   75th St., Suite 100, Omaha, Nebraska 68124.  Richard N. Berkshire is citizen of the

17   United States of America and is domiciled in Nebraska.  Therefore, ADI is a citizen

18   of Nebraska.

19   30.     Defendants TUSA and ADI, by virtue of their conversion rights,

20   control a majority of the shares of USAE and elect its Board.  Defendants TUSA

21   and ADI are sometimes referred to herein as the "Majority Shareholder

22   Defendants."

23   **H.     The Doe Defendants**

24   31.     Plaintiff does not know the true names and capacities, whether

25   individual, corporate, associate, or otherwise of defendants Does 1 through 10,

26   inclusive.  Plaintiff is informed and believes and based upon such information and

27   belief alleges that each fictitious defendant was in some way responsible for,

28   participated in, or contributed to the matter and things of which Plaintiff complains

herein, and in some form and under some theory, is subject to liability therefore. When the exact nature and identity of such fictitious defendants' responsibility for, participation in, and contribution to the matters herein alleged is ascertained, Plaintiff will seek leave to amend this Complaint to set forth the same.

## IV.   SUBSTANTIVE ALLEGATIONS

32.   In October 2009, when New Century purchased PAI, New Century's Board consisted of David Duquette, the President of the Company, and Josef Czikmantori, the acting Secretary.

33.   At the time, a New York-based asset management firm owned approximately $3.5 million of New Century's debt.  Subsequent to New Century's October 2009 purchase of PAI, Defendants Kirkland and Arnold acquired from the New York-based asset management firm, for approximately $100,000, an option to purchase its debt.  Defendants Kirkland and Arnold then approached Mr. Duquette and Mr. Czikmantori and threatened to foreclose on New Century's debt unless New Century provided Defendants Kirkland and Arnold with a controlling number of seats on its Board.  Defendants Kirkland and Arnold based these threats, in part, on the false pretense that they actually owned the debt.

34.   As a result, on or about April 5, 2010, Mr. Duquette and Mr. Czikmantori expanded the number of directors on New Century's Board to seven and appointed six new directors.  Of those six new directors, Defendants Pressman, Koock, Goldberg and Henderson were appointed at the direction of Defendants Kirkland and Arnold.  The principals of ADI directed Defendants Kirkland and Arnold to select those specific new Board members.  Also appointed at that time were Michael C. Cabral and Randall Humphreys.  After passing those resolutions, Mr. Duquette remained the Company's CEO and kept this seat on the Board, while Mr. Czikmantori remained Secretary but resigned his Board membership.

35.     The newly expanded Board met a few days later and, upon information and belief, passed a resolution providing the Board members with options to purchase one million shares of USAE common stock at $0.13 a share.  Half of those options would vest one year from the resolution and the other half would vest a year later.  The Board gave an additional option to purchase 5 million shares to Summit Trading, owned or controlled by Defendant Arnold,[3] in exchange for unspecified "investor relations" services.  The Board also established Defendant Kirkland and his law firm, Defendant Luce, as outside counsel and, on or about April 19, 2010, changed New Century's name to U.S. Aerospace, Inc.

36.     Shortly thereafter, Defendant Kirkland spearheaded a transaction in which the Company sought to purchase Antonov USA from ADI and TUSA.  Defendant Arnold's wife, Daisy Rodriguez, is the President and stockholder of TUSA.  The supposed purpose of the transaction was for the Company to acquire Antonov USA's sole asset, its purported existing relationship with the Antonov Company, a Ukrainian state-owned company with the capacity to undertake large aeronautical manufacturing projects.

37.     On or about July 1, 2010, USAE purchased Antonov USA in exchange for an aggregate of 383,793 shares of Series E Convertible Preferred Stock with a par value of $1.00.  Two-thirds of that stock was paid to ADI.  Under the governing documents, the holders could convert each series E share into 500 shares of USAE common stock.  The Series E voted together with the common stock as a single class on an as-converted basis, and the Series E benefitted from non-dilution protection.  Given the number of circulating common shares, after the purchase of Antonov

---

[3]     Summit Trading Limited is a Bahamian holding company and is owned by the Weast Family Trust, a private irrevocable trust established for the benefit of Defendant Arnold, Daisy Rodriguez, Stephanie Kaye and Tracia Fields.  Defendant Arnold is the settler of the Weast Family Trust, and his interest in Summit Trading Limited is approximately 80% of the value.

1    USA, the Series E holders, *i.e.*, ADI and TUSA, held the majority of voting shares

2    in USAE.

3         38.    The same day as the Antonov USA purchase, USAE entered into a

4    Strategic Cooperation Agreement with the Antonov Company.

5         39.    On July 6, 2010, the Company filed a report on Form 8-K with the SEC

6    concerning   a   press   release   issued   that   same   day   announcing   the   Company's

7    "Strategic Cooperation Agreement" with Antonov to bid on a Request for Proposal

8    ("RFP") form the U.S Air Force for the KC-Y Tanker Modernization Program.  The

9    press release stated, in relevant part:

10        LOS     ANGELES—(BUSINESS     WIRE)—U.S.     Aerospace,     Inc.

11        (OTCBB:  USAE),  an  aerospace  and  defense  contractor,  today

12        announced that it has entered into a Strategic cooperation agreement

13        with Antonov to bid on the request for proposal to supply 179 aerial

14        refueling tankers to the U.S. Air Force.

15

16        The airframes will be built in Ukraine by Antonov, with final assembly

17        at a new U.S. Aerospace, Inc. facility in the United States. The KC-X

18        Tanker Modernization Program, expected to be the largest contract in

19        Pentagon  history,  represents  the  first  step  of  the  strategic  cooperation

20        between  Antonov  and  U.S.  Aerospace,  Inc.  to  supply  and  service

21        aircraft to the U.S. military and commercial aircraft markets.

22        Antonov  designed,  built  and  operates  the  world's  largest  aircraft,  the

23        AN-225,  which  provides  strategic  airlift  capabilities  for  the  U.S.

24        Department of Defense and others. Antonov and U.S. Aerospace, Inc.

25        will bid three models for the KC-X program, the AN-124-KC, AN-122-

26        KC, a twin-engine variant of the AN-124-100 with advanced engines,

27        electronics  and  avionics,  and  AN-112-KC,  an  updated  airframe

28        designed specifically to meet the tanker program requirements.

"Antonov's participation in the U.S. Air Force tanker bid with U.S. Aerospace, Inc. is an historic opportunity for Antonov to showcase its premier design, engineering and manufacturing capabilities to the world," said Dmytro S. Kiva, President and General Designer of Antonov.   "We are extremely pleased to have entered into this agreement with U.S. Aerospace, Inc., and are looking forward to the long-term mutual benefits of our partnership."

"We are honored to be partnering with the world's premier designer and manufacturer of large transport aircraft," said Jerrold S. Pressman, Chairman of U.S. Aerospace, Inc. "We are particularly impressed by Mr. Kiva's strong leadership and vision for the future. Together we can deliver the U.S. Air Force a superior tanker at the most competitive price."

USAE, Current Report (Form 8-K), at Ex. 1 (July 6, 2010).

40.    On or about July 9, 2010, USAE submitted a response to the RFP, under which the aircraft components would have been built by Antonov Company in the Ukraine, with final assembly by USAE.  Since the U.S. Air Force denied the Company's request for an extension of the bidding deadline on July 8, 2010, the Company bid only one model of aircraft, the AN-112-KC.

41.    The Boeing Company and The European Aeronautic Defense and Space Company N.V., also bid on the RFP utilizing existing wide body commercial airliners as the basis for their KC-X tanker proposals.  Both designs were advanced and well developed, and both companies invested considerable resources into designing their tankers and in preparing their responses to the RFP.  Both companies spent substantially more time, money and effort preparing their RFP responses than USAE did.

42.     Ultimately, the Air Force found USAE's bid untimely and failed to consider it.  On August 2, 2010, the Company submitted a bid protest to the General Accounting Office ("GAO").  On October 6, 2010, the GAO denied the Company's bid protest.  USAE and the Antonov Company have yet to submit a successful bid together, and, ultimately, the Company recorded an impairment charge equal to the net book value of the Strategic Cooperation Agreement with Antonov.

43.     On or about July 14, 2010, a company called Omnicom filed a complaint against USAE alleging that in June 2010, USAE entered into an agreement with Omnicom to facilitate USAE's introduction to the Antonov Company (the "Omnicom Complaint").    Allegedly, the terms of the contract obligated USAE to pay a $1.5 million fee due within forty-eight hours after completion of a cooperation agreement between the Antonov Company and USAE, and another $1.5 million upon the consummation of a successful bid resulting from that agreement.  At the time, USAE had insufficient funds to pay that fee, and did not anticipate obtaining such a significant sum anytime soon thereafter. Defendant Kirkland was purported to have participated in negotiating the Omnicom agreement.

44.     According to Omnicom's allegations, the contract was memorialized by a single letter of acknowledgement, dated June 4, 2010, purportedly sent by Omnicom CEO, Mark Suleymanov, to Board member Jerrold Pressman, who, upon information and belief, was at the time and continues to be a client of Defendant Kirkland on other unrelated matters.  The Omnicom Complaint failed to allege any specific actions taken by Omnicom in performance of the alleged contract with USAE, much less explain why such actions constituted fair value for $3 million.

45.     Regardless, on July 15, 2010, *one day after the filing of the Omnicom Complaint*, Defendant Kirkland and Defendant Pressman entered into a settlement agreement with Omnicom on behalf of USAE.   The settlement was a "pre-packaged" transaction, agreed to even before the Complaint was filed, to facilitate the issuance of free-trading shares.  Under the terms of the settlement agreement,

Omnicom received 15 million free-trading shares of USAE common stock.  At that time, 15 million shares of USAE common stock held a value of approximately $2.3 million.   The settlement agreement specifically excluded from its release any subsequent claim by Omnicom that it was entitled to another $1.5 million in the event that the Company and the Antonov Company were successful in bidding on the project.  Furthermore, Omnicom was represented in the litigation against USAE by attorney Matthew B. Gruenberg, a solo practitioner based in Santa Monica, California, who had been an associate with Drier LLP at the time Kirkland was a partner with that now-defunct firm.   Mr. Gruenberg also represents Defendant Pressman in other litigation where Defendant Pressman is being sued for investment fraud.   The Omnicom settlement agreement was not submitted to the Company Board for approval before it was executed.[4]

46.   On or about August 11, 2010, USAE's Board of Directors post-hoc ratified the Omnicom settlement agreement and Defendant Kirkland's role in approving the settlement.   In that same resolution, the Board accepted Mr. Duquette's resignation as CEO and as a Board member, effective August 16, 2010, and appointed James Worsham to the Board and as the Company's new CEO, effective September 29, 2010.  Mr. Czikmantori also resigned as Secretary effective

---

[4]   The Company's Form 10-Q/A for the period ending June 30, 2010, dated September 13, 2010, filed with the SEC discloses:

> On August 20, 2010, we instructed our transfer agent to issue 5 million shares and agreed to issue an additional 10 million shares to Omnicom Holdings pursuant to a stipulated settlement in an action filed by Omnicom for a $1.5 million commission claimed due in connection with our agreement with Antonov.   The issuance was exempt from registration pursuant to Section 3(a)(10) of the Securities Act as an issuance approved by a court after a hearing upon the fairness of its terms and conditions.

USAE, Quarterly Report (Form 10-Q/A), at *8 (September 13, 2010).

August 16, 2010.  Michael C. Cabral was appointed President effective August 23, 2010.

47.   Following the Omnicom settlement, 4.55 million shares of stock initially issued to Omnicom were then reissued to a number of other entities, including Zynatech, Aegis Capital, Adanta Partners, Omnivest Holdings, Net Gen, Oceanic Consulting, Insight Capital Consultants and James Meagher at the direction of Tom Biggs and Dick Fixaris, employees of Defendant Arnold.  At least one of those companies had a pre-existing relationship with USAE.

48.   The Company's report on Form 10-Q for the period ending September 30, 2010 reported,

> Operating loss for the three and nine months ended September 30, 2010, was $12,156,947 and $14,235,297 compared to $66,166 and $108,525 for the three and nine months ended September 30, 2009. ***The increase in loss of $12,090,781 and $14,126,772, respectively, is primarily due to the impairment charge for the Strategic Cooperation Agreement***, the acquisition of PAI, the reclassification of NCR as a discontinued operation ***and due to increased consulting services for new aerospace marketing and service contracts***.

USAE, Quarterly Report (Form 10-Q), at *4 (December 16, 2010) (emphasis added).  The 10-Q goes on to report that $11,513,790 of this loss for the nine months ended September 30, 2010 was due to a "non-cash expense for impairment of an intangible asset," that $319,319 of the loss was from "stock issued for services," and  another $1,500,000 of the loss was due to "stock issued for the settlement of a liability…." *Id.* at *5.

49.   By December 2010, USAE required further financing to remain a going concern.  The sole potential funding offer to USAE came from the same New York-based asset management firm that had extended credit, as discussed above.  The tentative proposed terms were beneficial to the Company, but required the Company

1    to terminate the rights of the Series E holders in order to encourage further
2    investment by market participants who otherwise would shy away from a company
3    controlled by the Series E holders.

4          50.    When informed of the proposed lender's terms, Defendant Kirkland
5    unilaterally rejected the proposed funding on behalf of the Company.  Further,
6    Defendant Kirkland asserted that he would prefer placing the Company into
7    bankruptcy rather than accept the funding under the premise that the Series E
8    holders could emerge from the proceedings owning a shell company containing the
9    necessary licenses to enter into government contracts as well as the cooperation
10   agreement with the Antonov Company.

11         51.    Defendant Kirkland attempted to effect this purported rejection without
12   consulting with the Board or the Company's CEO, Mr. Worsham.  The Company's
13   financial situation became increasingly precarious.  Evidently, Defendant Kirkland
14   and the Series E holders are in fact resigned to placing the Company in bankruptcy.
15   Mr. Worsham and the Company, however, believe that with financing, USAE can
16   avoid bankruptcy, become profitable, and protect the interests of the common
17   shareholders and USAE's creditors.

18         52.    In late 2010, Mr. Worsham retained the law firm of Akin Gump Strauss
19   Hauer & Feld LLP ("Akin Gump") to investigate Defendant Kirkland's actions.
20   The Former Director Defendants were unaware that Akin Gump had been engaged
21   by Mr. Worsham to conduct an investigation into their conduct and that of
22   Defendant Kirkland.

23         53.    On January 26, 2011, Akin Gump produced a memorandum (the "Akin
24   Gump Memo") describing misconduct by Kirkland and his colleagues, concluding
25   that Kirkland had placed his own interests and those of the Majority Shareholder
26   Defendants ahead of the interests of the Company, in violation of his professional
27   and fiduciary duties.  The Akin Gump Memo recommended that, at a minimum,
28   Kirkland and his colleagues be divested of their duties.

54.    On January 27, 2011, following Mr. Worsham's dissemination of the Akin Gump Memo to the Board, Mr. Worsham, Mr. Cabral and independent Director Randall Humphreys were removed, without cause, from USAE's Board by Stockholder Written Consent signed by Richard Berkshire on behalf of Defendant ADI.  Mr. Cabral was also removed as President of the Company at a January 28, 2011 Board meeting.  Mr. Worsham resigned a short time later by letter dated February 11, 2011, citing his opposition to Defendant Kirkland's conduct.

55.    On January 28, 2011, the Company filed form 15-12G with the SEC to deregister its stock.  It reported a net loss for the quarter ended September 30, 2010, of $11.5 million on revenue of $660,144.

56.    In an attempt to exculpate themselves from any claims of illegal activity, breach of fiduciary duty or the like, Defendants Arnold, Goldberg, Koock and Henderson enlisted the help of Defendant Kolker and purportedly each entered into a "Mutual General Release" (the "Releases").  Defendant Kolker was the only counterparty signatory to the individual Releases, signing on behalf of both USAE and PAI.  The releases were drafted in the broadest possible terms to release the covered Defendants from liability for:

> [A]ny and all causes of action, rights, obligations, damages, liabilities and claims of any kind or nature whatsoever, at law and in equity, including without limitation all possible claims for breach of contract, quantum meruit, breach of fiduciary duty, aiding and abetting, fraud, negligent misrepresentation, wrongful termination, discrimination, sexual harassment, corporate waste, misappropriation, intentional misconduct, professional misconduct, malpractice, professional negligence, negligence, unpaid fees, salary, wages, vacation and overtime, and all claims in any way arising out of or relating to any relationship or dealings involving any of the USAE Parties (defined below) and any of the Releasee Parties (collectively, "Claims").

(Emphasis added).  As the Releases state, it was "the parties' intention to fully, finally and forever settle, release and resolve all claims, regardless of whether known or unknown, foreseen or unforeseen, suspected or unsuspected, vested or contingent, accrued or unaccrued."

57.    There is no indication of what consideration, if any, was given in return for these extremely broad Releases executed in favor of Defendants Arnold, Goldberg, Koock and Henderson.  More importantly, the timing of the Releases themselves indicates a serious lack of trustworthiness.  The Releases were purportedly executed on April 29, 2011, after the Akin Gump Memo had been issued and circulated and just before the filing of this lawsuit.  Therefore, at the purported time of the signing of the Releases, Defendants well-knew that they were likely to become defendants in a lawsuit in the very near future.

58.    In addition, it would be subjectively and objectively unreasonable for any person or persons, acting on behalf of USAE, to give up the right to investigate and prosecute potentially meritorious claims on behalf of the Company against the Former Director Defendants. However, because of his personal and business dealings with the Former Director Defendants, it was in Defendant Kolker's self-interest to attempt to exculpate the former Board members, rather than act on the wrongdoing alleged herein.

59.    In light of the serious nature of the breaches of fiduciary duty alleged herein, the execution of the Releases represents an independent, actionable breach of fiduciary duty. Additionally, because Defendant Kolker is an interested and conflicted party who is beholden to Defendants Kirkland and Arnold—due to extensive personal and financial ties—it would be impossible for him to act in a reasonable and/or objective manner.  As such, the Releases are the product of fraud and are invalid and unenforceable.

60.    Defendant Kolker also executed releases benefiting ADI and TUSA, which were substantially the same as those entered into with Defendants Arnold,

Goldberg, Koock and Henderson.  The releases that were executed on behalf of ADI and TUSA suffer from the same infirmities as the other Releases, *i.e.*, they are unreasonable and the product of Defendant Kolker's self-interested desire to exculpate his business associates and friends.  In addition, while the ADI and TUSA releases recite the inclusion of consideration on behalf of the "Releasees," that consideration was likely worthless at the time of the signing of the contracts.  As the ADI and TUSA releases provide, ADI agreed to the quitclaiming of "[t]wenty thousand (20,000) shares of Series E Convertible Preferred Stock … convertible into 10,000,000 shares of Common Stock," and TUSA agreed to the quitclaiming of "[t]en thousand (10,000) shares of the Series E Convertible Preferred Stock … convertible into 5,000,000 shares of Common Stock."   However, the shares purportedly quitclaimed were virtually worthless on the purported date of the releases, April 29, 2011, due to the lack of a market.[5]  Also, as discussed herein, the Series E shares that ADI and TUSA claimed to be relinquishing were fraudulently granted in the first place and therefore were not the legal property of those entities, rendering the Releases void as the product of fraud and for lack of valid consideration.

61.   By the actions alleged herein, Defendant Kirkland and, vicariously, Defendant Luce violated their professional responsibilities and fiduciary duties owed to USAE as USAE's outside general counsel.   Defendant Kirkland has consistently placed his own interests and the objectives of other individuals before those of his client and acted well beyond the scope of his authority.  Defendant Kirkland also violated his fiduciary duties of loyalty, good faith and care to the

---

[5]   Yahoo finance reports that the adjusted stock price of USAE common stock on April 29, 2011 was $0.01.  However, the volume on that day was only 54,500 shares and the volume for the two preceding days was 9,400 and 12,800 respectively. With such small volume it is unlikely that ADI or TUSA would have been able to sell any of the convertible shares, even if they were given the opportunity to do so.

1   Company and aided and abetted similar breaches of duty by the Former Director

2   Defendants and the Majority Shareholder Defendants.

3   62.   The Former Director Defendants have similarly breached their

4   fiduciary duties of care and loyalty.   The Former Director Defendants have

5   abdicated their responsibility to adequately monitor USAE's business dealings and

6   oversee Defendants Kirkland and Luce.

7   63.   Further, the Majority Shareholder Defendants, ADI and TUSA, which

8   control a majority of the USAE Board, have breached and continue to breach their

9   fiduciary duties owed to the Company and the minority shareholders by insisting

10   that the Company be placed into bankruptcy rather than accept financing which

11   could allow the Company to become profitable and protect the interests of the

12   common shareholders and USAE's creditors.

13   64.   Defendant Arnold has aided and abetted each of the foregoing breaches

14   of fiduciary duty by Defendants Kirkland and Luce, the Former Director Defendants

15   and the Majority Shareholder Defendants.

16

17                  **V.   DERIVATIVE ACTION AND DEMAND**

18                        **EXCUSED ALLEGATIONS**

19   65.   Plaintiff brings this action derivatively, in the right and for the benefit

20   of the Company, to redress Defendants' breaches of fiduciary duties, and

21   Defendants Kirkland and Luce's legal malpractice.

22   66.   Plaintiff is an owner of USAE common stock and was an owner of

23   USAE common stock at all relevant times hereto.

24   67.   Plaintiff will adequately and fairly represent the interests of the

25   Company and its shareholders in enforcing and prosecuting its rights.

26   68.   As a result of the facts set forth herein, Plaintiff has not made any

27   demand on the Board to institute this action against Defendants.   Such demand

28   would be a futile and useless act because a majority of the members of the Board are

1    incapable of making an independent and disinterested decision to institute and
2    vigorously prosecute this action.

3        69.    At the time of the breaches of fiduciary duty alleged herein, the USAE
4    Board consisted of Mr. Cabral, Mr. Humphreys, Defendant Goldberg, Defendant
5    Henderson, Defendant Koock and Defendant Pressman.   Defendants Goldberg,
6    Henderson, Koock and Pressman were each hand-picked by Defendant Kirkland at
7    the direction of Defendant ADI, a majority shareholder of the Company.  Defendant
8    ADI owns two-thirds of the Series E Convertible Preferred Stock of the Company.
9    Together with TUSA, ADI owns a majority of the voting shares in USAE.  As a
10   result, four (4) of the six (6) directors in place at the time of the transactions
11   described herein were controlled by, and beholden to, Defendants Kirkland and
12   ADI.   Therefore, a majority of the Board was conflicted and entangled with and
13   controlled and dominated by Defendants Kirkland, Luce and ADI, preventing them
14   from fairly considering, let alone taking, all necessary and proper action on the
15   Company's behalf.

16       70.    Likewise, demand would have been futile if it had been made on the
17   date of filing of this action.  On May 18, 2011, the USAE Board consisted of one
18   person, Defendant Hal Kolker.   Defendant Kolker is a long-time associate and
19   business partner of Defendants Arnold and Kirkland.  In early 2010, Defendants
20   Arnold and Kirkland introduced Defendant Kolker to USAE in order that Defendant
21   Kolker might provide financing to the Company.  Defendants Arnold and Kirkland
22   represented to USAE's then Chief Executive Officer, David Duquette, that
23   Defendant Kolker had previously engaged in a number of business deals with
24   Arnold and Kirkland.  While Defendant Kolker did not invest in the Company at
25   that time, he was later personally selected by Defendants Kirkland and Arnold to
26   represent their interests—not the interests of the Company—after the ouster of the
27   Board in 2011.

28

71.     The most striking illustration of Defendant Kolker's allegiance to the Defendants' interests is his willingness to execute the Releases, which purport to exculpate Defendants Arnold, Goldberg, Henderson, Koock, ADI and TUSA. Because the consideration for those Releases is either nonexistent or essentially worthless, the Releases served no cognizable business interest.  In addition, the purported timing of the signing of the Releases—after the Akin Gump letter was circulated and just before this action was filed—suggests that Defendant Kolker intended to protect the Defendants, to the detriment of the Company.  Nevertheless, because USAE's applicable corporate governance documents do not provide for the maintenance of a one person Board, it is unlikely that Defendant Kolker had the authority or ability to enter into the Releases on behalf of the Company.  Most importantly, Defendant Kolker's relationship with Defendant Kirkland and Arnold necessarily renders him interested and biased, rendering the Releases void and unenforceable.  Defendant Kolker's willingness to enter into the Releases, which serve no reasonable business purpose, demonstrates his inability to objectively judge a litigation demand.

72.     Any demand made pursuant to Rule 23.1 of the Chancery Court Rules would have been futile as of the filing of this action on May 18, 2011, given the fact that: (a) Defendant Kolker has prior business and personal dealings with other Defendants, including Defendants Arnold and Kirkland, and therefore cannot be considered independent; and (b) Defendant Kolker's actions while serving as the solitary Board member of USAE, including the signing of the Mutual General Releases, demonstrate that he was beholden to Defendants.

73.     Demand is also excused because the underlying transactions complained of herein were not and could not have been the product of a valid exercise of business judgment.

74.     Demand is also excused because the wrongs alleged herein constitute violations of the fiduciary duties owed by the Former Director Defendants and

Defendant Kolker and are incapable of ratification by the current Board.   The Former Director Defendants and Defendant Kolker are subject to liability for breaching their fiduciary duties to USAE and Defendant Kolker for also aiding and abetting by, *inter alia*, failing to adequately monitor USAE's business dealings and oversee Defendants Kirkland and Luce.

## COUNT I
### Against Defendants Kirkland And Luce For Legal Malpractice

75.   Plaintiff realleges the foregoing paragraphs as though fully set forth herein.

76.   By accepting his position as USAE's outside general counsel, Defendant Kirkland obligated himself to "conform his … representation to the concept that the client is the organization itself, acting through its highest authorized officer, employee, body, or constituent overseeing the particular engagement." Cal. Rules Prof'l Conduct, Rule 3-600; *see also* Model Rules Prof'l Conduct, Rule 1.2 ("[A] lawyer shall abide by a client's decisions concerning the objectives of representation and, as required by Rule 1.4, shall consult with the client as to the means by which they are to be pursued.").   Defendant Kirkland, however, consistently placed the objectives of the Series E holders, *i.e.*, ADI, TUSA and their affiliates, before the well-being of the Company, in violation of his ethical duties.

77.   Defendant Kirkland's continued representation and/or affiliation with ADI and its interests constituted conflicts which should have precluded him from representing the Company.   Defendant Kirkland cannot ethically allow his representation of the Company to be directed by a client with adverse interests. Defendant Kirkland's loyalty to the Series E holders rather than to the Company has caused, and continues to cause, USAE significant material harm.   For example, Defendant Kirkland, acting at the behest of ADI, prevented the Company from considering essential funding offered by Centrecourt because its terms included the

1  limitation of the Series E stock.  Defendant Kirkland's preference for placing the
2  Company into bankruptcy under the theory that the Series E holders would emerge
3  as the owners of important USAE assets further underscores this conflict.

4       78.     The State Bar of California, of which Defendant Kirkland is a member,
5  proscribes the continued representation of a client in the face of such a conflict.  *See*
6  Cal. Rules of Prof'l Conduct, Rule 3-310(C) ("A member shall not, without the
7  informed written consent of each client:  (1) Accept representation of more than one
8  client in a matter in which the interests of the clients potentially conflict; or (2)
9  Accept or continue representation of more than one client in a matter in which the
10  interests of the clients actually conflict …").  Defendant Kirkland never provided
11  the Company with notice of his existing conflict.  Even so, such notice and consent
12  could not absolve Defendant Kirkland of his ethical duty to pursue his client's
13  objectives rather than those of another.

14       79.     Defendant Kirkland similarly violated California Rules of Professional
15  Conduct, Rule 3-310(B), which states that "[a] member [of the Bar] shall not accept
16  or continue representation of a client without providing written disclosure to the
17  client where: … (3) [t]he member has or had a legal, business, financial,
18  professional, or personal relationship with another person or entity the member
19  knows or reasonably should know would be affected substantially by resolution of
20  the matter; or (4) [t]he member has or had a legal, business, financial, or
21  professional interest in the subject matter of the representation."  *See also* Model
22  Rules of Prof'l Conduct R. 1.7 ("a lawyer shall not represent a client if the
23  representation involves a concurrent conflict of interest").  Defendant Kirkland
24  never attempted to provide such disclosure to the Company, which in any event
25  would have been inadequate.

26       80.     Defendant Kirkland's professional relationship with ADI obligated him
27  to discontinue his representation of the Company.  Under California Rules of
28  Professional Conduct, Rule 3-300, "[a] member shall not enter into a business

transaction with a client; or knowingly acquire an ownership, possessory, security, or other pecuniary interest adverse to a client ….”

81. The California Rules of Professional Conduct prohibited Defendant Kirkland from participating in USAE's purchase of Antonov USA. In that transaction, Defendant Kirkland did disclose his conflict to the Board, which purported to waive any such conflict on behalf of the Company. However, even if the Board were empowered to waive a conflict regarding the Company's counsel, the majority of the Board members were appointed by ADI and therefore were hopelessly conflicted in the transaction. The interested directors should have recused themselves from participating in the vote. Moreover, the purchase involved the effective sale of control over the Company to another of Defendant Kirkland's clients and/or related parties. Defendant Kirkland therefore should not have asked for, or accepted, a waiver concerning such a clear conflict. Instead, he should have advised his client to obtain separate counsel to explore whether the transaction benefitted the Company and its shareholders, or just ADI and the ADI-appointed Board members.

82. Defendant Kirkland also breached his ethical duties by failing to consult or take direction from his client on important matters. Defendant Kirkland adopted a role beyond that of outside general counsel by immersing himself in the day-to-day management of the Company at ADI's behest. In the context of the funding offer, it was beyond Defendant Kirkland's duties as general counsel to take action without direction from the Company through its highest authorized officer, James Worsham. *See* Cal. Rules of Prof'l Conduct, Rule 3-600. After receiving such direction, Mr. Kirkland should have vigorously defended USAE's position, whether or not he agreed with it, rather than promoting the position of the Series E holders.

83. Defendant Kirkland also violated his ethical duties by failing to inform the Company about the Omnicom settlement offer, let alone seek direction regarding

whether the offer was sufficiently advantageous.  *See* Cal. Rules of Prof'l Conduct, Rule 3-510.

## COUNT II
### Against Defendants Kirkland And Luce, The Former Director Defendants, Defendant Kolker And The Majority Shareholder Defendants For Breach Of Fiduciary Duty; And Against Defendants Arnold, Kirkland, And Luce For Aiding And Abetting

84.    Plaintiff realleges the foregoing paragraphs as though fully set forth herein.

85.    Defendants agreed to and did participate with and/or aided and abetted one another in a deliberate course of action designed to divert corporate assets in breach of fiduciary duties they owed to the Company.

86.    Defendants have violated fiduciary duties of care, loyalty, good faith, and independence owed to USAE and its public shareholders, have engaged in unlawful self-dealing and have acted to put their personal interest and/or their colleagues' interests ahead of the interests of USAE and its shareholders.

87.    Defendants Kirkland and Luce owed a fiduciary duty to USAE stemming from Defendant Kirkland's position as outside general counsel and from his activities in managing the Company's operations.  Defendant Kirkland assumed an affirmative duty to protect the interest of the Corporation, but also an obligation to refrain from conduct which would injure the corporation and its stockholders or deprive them of profit or advantage.

88.    The Former Director Defendants at all relevant times owed a duty of loyalty to USAE and its shareholders, including a duty to be independent and motivated by neither self-interest nor ill will.  The Former Director Defendants breached this duty.

89.    The Former Director Defendants at all times placed their own interests and interests of outside parties before the interests of USAE and its shareholders.

The Former Director Defendants approved and/or ratified the transactions that resulted in the transfer of significant numbers of shares to the Majority Shareholder Defendants for inadequate consideration to USAE.

90.     The Former Director Defendants gave Summit Trading, a company controlled by Defendant Arnold, an option to purchase 5 million shares of USAE for no consideration to USAE.

91.     The Former Director Defendants approved and/or ratified the sham settlement with Omnicom that resulted in millions of shares of USAE being transferred to outside parties for no consideration to USAE.

92.     The Former Director Defendants approved and/or ratified Defendant Kirkland's decision to reject crucial financing needed to keep USAE a going concern, thereby approving and/or ratifying, or taking no action to prevent actions that placed USAE in imminent danger of insolvency.

93.     The Majority Shareholder Defendants at all times placed their own interests and interests of outside parties before the interests of the minority shareholders.

94.     Defendant Arnold aided and abetted the foregoing breaches of fiduciary duties.  Defendant Arnold had actual knowledge of all of Defendant Kirkland's and the Former Director Defendant's breaches of fiduciary duty.  Defendant Arnold, along with Defendant Kirkland, misrepresented to the Company that Defendants Arnold and Kirkland owned certain USAE debt which was actually owed by Centrecourt.

95.     Defendant Arnold, along with Defendant Kirkland and at the behest of ADI, directed the Company to expand the Board and to appoint four of the Former Director Defendants to the USAE Board.  The Former Director Defendants installed by Defendant Arnold then granted Defendant Arnold's company, Summit Trading, an option to purchase 5 million shares of USAE for no consideration.

96.     Defendant Arnold also assisted in engineering a transaction in which USAE purchased Antonov USA from ADI and TUSA, resulting in ADI and TUSA owning the majority of the voting shares in USAE.  Defendant Arnold's wife is the President of TUSA.  Defendant Arnold knew that Defendant Kirkland was placing his interests and those of the Majority Shareholder Defendants above those of USAE and its common shareholders and knew that USAE was to receive inadequate consideration for the transaction.

97.     Moreover, Defendant Arnold had actual knowledge that Defendant Kirkland and Defendant Pressman engineered the sham settlement with Omnicom. Defendant Arnold directed his employees to re-issue a substantial portion of the stock issued to Omnicom to a series of other entities.

98.     Finally, in light of the serious nature of the breaches of fiduciary duty alleged herein, the execution of the Releases, as described herein, by Defendant Kolker, purportedly on behalf of the Company, in an attempt to release Defendants Arnold, Goldberg, Henderson, Koock, and ADI from all liability, represents an independent, actionable breach of fiduciary duty.

99.     As a proximate result of Defendants' conduct, USAE has been injured and is entitled to damages.

### COUNT III
### Against Defendants Kirkland And Luce And The Former Director Defendants For Corporate Waste

100.   Plaintiff realleges the foregoing paragraphs as though fully set forth herein.

101.   Corporate waste is defined as an exchange of corporate assets for consideration so disproportionately small as to lie beyond the range at which any reasonable person might be willing to trade.

102.   There was no substantial consideration received by the Company in exchange for the Series E Convertible Preferred Stock issued to ADI and TUSA.

103.   There was no substantial consideration received by the Company in exchange for the shares issued to Omnicom in connection with the Omnicom settlement.

104.   There was no substantial consideration received by the Company in exchange for the option to purchase 5 million shares of USAE granted to Summit Trading, a company controlled by Defendant Arnold.

105.   Under the circumstances, no reasonable business person could conclude that the aforementioned transactions were worthwhile for the Company and in the Company's best interests.

106.   Defendants Kirkland and Luce and the Former Director Defendants are therefore guilty of committing corporate waste and are liable to the Company for all damages sustained thereby.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A.   Against all of the Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of Defendants' misconduct;

B.   Granting appropriate equitable relief to remedy Defendants' breaches of fiduciary duties;

C.   Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, experts' fees, costs, and expenses; and

D.   Granting such other and further relief as the Court deems just and proper.

///
///
///
///

## **JURY TRIAL DEMAND**

Plaintiff demands a trial by jury.

DATED:  February 19, 2015

WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP
Francis M. Gregorek
Betsy C. Manifold
Rachele R. Rickert
Marisa C. Livesay


            /s/ Rachele R. Rickert
         RACHELE R. RICKERT

750 B Street, Suite 2770
San Diego, CA 92101
Telephone:  619/239-4599
Facsimile:  619/234-4599
gregorek@whafh.com
manifold@whafh.com
rickert@whafh.com
livesay@whafh.com

Attorneys for Plaintiff

- 32 -

1

## VERIFICATION

2        I, Frederick Rich, am a party to this action. I hereby verify that I have read
3   the foregoing Verified Second Amended Derivative Complaint, know its contents
4   and authorized its filing. The matters stated in the Verified Second Amended
5   Derivative Complaint are true based on my own knowledge, except as to those
6   matters stated on information and belief, and as to those matters I believe them to be
7   true.

8        I verify under penalty of perjury that the foregoing is true and correct.

9

10

11  DATE: February _18_, 2015                        _____
                                                          FREDERICK RICH
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  USAE:21555.SAC

- 33 -

**CERTIFICATE OF SERVICE**

I, Kathryn Cabrera, the undersigned, declare:

1.      That declarant is and was, at all times herein mentioned a resident of the County of San Diego, over the age of 18 years, and not a party to or interested in the within action; that declarant's business address is 750 B Street, Suite 2770, San Diego, California 92101.

2.      That on February 19, 2015, declarant served the following document(s) via the CM/ECF System to the parties who are registered participants of the CM/ECF System and via U.S. Mail to those parties as indicated on the attached service list who are not registered participants of the CM/ECF System:

**VERIFIED SECOND AMENDED DERIVATIVE COMPLAINT**

3.      That there is regular communication between the parties.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 19th day of February 2015, at San Diego, California.

KATHRYN CABRERA

USAE:21561

- 34 -

USAE, INC. DERIVATIVE ACTION
Service List – February 19, 2015
Page 1
Case No. CV 11-04272-JLS (SPx)

**COUNSEL FOR PLAINTIFF**

Francis M. Gregorek
Betsy C. Manifold
Rachele R. Rickert
Marisa C. Livesay
WOLF HALDENSTEIN ADLER
   FREEMAN & HERZ LLP
750 B Street, Suite 2770
San Diego, CA 92101
      619/239-4599
      619/234-4599 (fax)
gregorek@whafh.com
manifold@whafh.com
rickert@whafh.com
livesay@whafh.com

Counsel for Plaintiff Frederick Rich

**COUNSEL FOR DEFENDANTS**

Robert A. Meyer
Saul D. Brenner
W. Allan Edmiston
Jennifer Ashley Jason
LOEB & LOEB LLP
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA 90067
      310-282-2000
      310-282-2200 (fax)
rmeyer@loeb.com
sbrenner@loeb.com
aedmiston@loeb.com
jjason@loeb.com

Counsel for Defendant MCKENNA,
LONG & ALDRIDGE, LLP
(f/k/a Luce Forward Hamilton &
Scripps, LLP)

*Jerrold S Pressman
  1201 Idaho Avenue Apt 10
  Santa Monica, CA 90401
      310-780-7068

Defendant Appearing Pro Se

***Served via U.S. Mail**

21428