| | |
|---|---|
| RACHELE R. RICKERT (190634)<br>rickert@whafh.com<br>MARISA C. LIVESAY (223247)<br>livesay@whafh.com<br>BRITTANY N. DEJONG (258766)<br>dejong@whafh.com<br>**WOLF HALDENSTEIN ADLER**<br>  **FREEMAN & HERZ LLP**<br>750 B Street, Suite 2770<br>San Diego, CA 92101<br>Telephone: 619.239.4599<br>Facsimile: 619.234.4599<br><br>DANIEL W. KRASNER (*pro hac vice*)<br>krasner@whafh.com<br>**WOLF HALDENSTEIN ADLER**<br>  **FREEMAN & HERZ LLP**<br>270 Madison Avenue<br>New York, NY 10016<br>Telephone: 212.545.4600<br>Facsimile: 212.545.4653<br><br>*Attorneys for Plaintiff Frederick Rich* | MICHAEL C. HEFTER<br>michael.hefter@hoganlovells.com<br>RYAN M. PHILP<br>ryan.philp@hoganlovells.com<br>**HOGAN LOVELLS US LLP**<br>875 Third Avenue<br>New York, NY 10022<br>Telephone: 212.918.3000<br>Facsimile: 212.918.3100<br>(*admitted pro hac vice*)<br><br>ALAN KOSSOFF (SBN 150932)<br>**KINSELLA WEITZMAN ISER**<br>  **KUMP & ALDISERT LLP**<br>akossoff@kwiklaw.com<br>808 Wilshire Boulevard, 3rd Floor<br>Santa Monica, California 90401<br>Telephone: 310.566.9800<br>Facsimile: 310.566.9850<br><br>*Attorneys for Plaintiffs CAMOFI*<br>*Master LDC and CAMHZN Master LDC* |

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

| | |
|---|---|
| DAVID L. DEFREES, et al.,<br><br>　　　　Plaintiffs,<br>　　v.<br><br>JOHN C. KIRKLAND, et al.,<br><br>　　　　Defendants,<br>　　and<br><br>U.S. AEROSPACE, INC.<br><br>　　　　Nominal Defendant.<br>_____ | Case No. CV 11-04272 JLS (SPx)<br>consolidated with Case No. CV 11-04574 JLS (SPx)<br><br>(Derivative Action)<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT**<br><br>Hearing Date: January 26, 2018<br>Time: 2:30 p.m.<br>Courtroom: 10A, 10th Floor<br>Judge: Hon. Josephine L. Staton |

**TABLE OF CONTENTS**

**Page No.**

I. INTRODUCTION ........................................................................................ 1

II. FACTUAL BACKGROUND ..................................................................... 3

III. THE COURT SHOULD GRANT PRELIMINARY APPROVAL
OF THE PROPOSED SETTLEMENT ....................................................... 6

    A. Legal Standard for Preliminary Approval ............................................. 6

    B. The Settlement Satisfies the Standard for
Preliminary Approval .......................................................................... 7

        1. The Settlement Confers Substantial and
Material Benefits Upon USAE Shareholders
and Creditors ................................................................................ 8

        2. The Settlement Was Reached Through
Arms-Length Bargaining with the Assistance
of Experienced Mediators ............................................................. 8

        3. The Settlement Appropriately Balances
the Risks of Continued Litigation with the Benefits
Conferred on USAE Shareholders and Creditors ..................... 10

IV. THE PROPOSED NOTICE TO USAE SHAREHOLDERS
AND CREDITORS IS REASONABLE ................................................... 11

V. CONCLUSION ......................................................................................... 12

# TABLE OF AUTHORITIES

**Page No.**

**Cases**

*Barovic v. Ballmer*,
  No. 2:14-CV-00586-JCC,
  2016 WL 199674 (W.D. Wash. Jan. 13, 2016) ..................................................... 12

*In re AOL Time Warner S'holder Derivative Litig.*,
  No. 02-cv-6302, 2006 WL 2572114 (S.D.N.Y. Sept. 6, 2003) ............................. 6

*In re Atmel Corp. Derivative Litig.*,
  No. C-06-4592, 2010 WL 9525643 (N.D. Cal. Mar. 31, 2010) ...................... 8, 10

*In re Hewlett-Packard Co. S'holder Derivative Litig.*,
  No. 12-cv-06003, 2015 WL 1153864 (N.D. Cal. Mar. 13, 2015) ................... 7, 10

*In re MRV Commc'ns, Inc. Derivative Litig.*,
  No. 08-cv-03800, 2013 WL 2897874 (C.D. Cal. June 6, 2013) ..................... 6, 12

*In re NVIDIA Corp. Derivative Litig.*,
  No. C-06-06110, 2013 WL 2897874 (N.D. Cal. Dec. 22, 2008) ................ 6, 7, 10

*Lloyd v. Gupta*,
  No. 15-CV-04183-MEJ, 2016 WL 3951652
  (N.D. Cal. July 22, 2016) .................................................................................... 12

*Maher v. Zapata Corp.*,
  714 F.2d 436 (5th Cir. 1983) ............................................................................... 10

*MWS Wire Indus., Inc. v. Cal. Fine Wire Co.*,
  797 F.2d 799 (9th Cir. 1996) ................................................................................. 6

*Nat'l Rural Telecomm'ns Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ........................................................................ 10

*Villanueva v. Morpho Detection, Inc.*,
  No. 13-cv-05390, 2015 WL 4760464
  (N.D. Cal. Aug. 12, 2015) ............................................................................... 8, 11

**Other Authorities**

MANUAL FOR COMPLEX LITIGATION
  § 30.41, at 237 (3d ed.1995) ................................................................................. 7

**Rules**

Fed. R. Civ. P.
  23.1(c) ..................................................................................................................... 6

## I. INTRODUCTION

The above-captioned consolidated derivative actions (the "Litigation") were brought on behalf of U.S. Aerospace ("USAE" or the "Company"), its shareholders and creditors against former directors, legal counsel, and related entities for breach of fiduciary duty, legal malpractice, vicarious liability, aiding and abetting breach of fiduciary duty, corporate waste and civil conspiracy.

This memorandum is submitted by representative plaintiffs Frederick Rich ("Rich"), CAMOFI Master LDC and CAMHZN Master LDC (together, the "CAM Funds") (collectively, "Plaintiffs") in support of their unopposed motion for preliminary approval of the proposed derivative settlement (the "Settlement"). As set forth in the Stipulation of Settlement filed herewith (the "Stipulation"),[1] the Settlement resolves all claims brought on behalf of USAE against Defendants Dentons US LLP[2] ("Dentons"), John C. Kirkland ("Kirkland"), James D. Henderson, Michael Goldberg, Kenneth Koock, Jerrold Pressman, Richard Berkshire, Hal Kolker, Charles Arnold ("Arnold"), TUSA Acquisition Corp. ("TUSA"), Daisy Rodriguez, the Estate of Richard Fixaris, and KC-X American Aerospace, LLC ("KC-X")(collectively, the "Released Defendants"), leaving only the defaults entered against non-settling defendant American Defense Investments, LLC ("ADI") and the awards of sanctions ordered by the Court or judgments reflecting liability for such orders against Kirkland, ADI and their counsel, Mark Vega. The Stipulation of Settlement (the "Stipulation") is intended to fully, finally and forever resolve, discharge and settle the Released Claims, upon and subject to the terms and conditions set forth in the Stipulation.

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Stipulation.

[2] Plaintiffs initially named Luce, Forward, Hamilton & Scripps LLP ("Luce Forward") as a defendant. Luce Forward subsequently merged into McKenna Long & Aldridge LLP ("McKenna"), which later merged into Dentons. The Settlement applies to all three law firms.

The Settlement is the result of extensive, arm's-length negotiations between Plaintiffs, on the one hand, and Dentons, James D. Henderson, Michael Goldberg, Arnold, TUSA, Daisy Rodriguez and KC-X (the "Settling Defendants" and together with Plaintiffs, the "Settling Parties"), on the other hand, with the assistance of neutral mediators, following over six years of protracted litigation. As a result of the prosecution and settlement of the Litigation, the Settling Defendants will pay $12.2 million, to be distributed as follows: (i) $10.6 million to the CAM Funds, based on the CAM Funds' senior secured notes, as well as fees and expenses incurred in the prosecution of this Litigation, and (ii) up to $290,000 to USAE Shareholders, including holders of common stock equivalents, who held shares on March 31, 2010, and February 21, 2017 and who continue to hold USAE Shares as of the Notice Date—excluding Defendants and Related Persons. *See* Stipulation §§ 2.1–2.3.[3]

The Settlement confers substantial benefits upon USAE Shareholders and creditors and meets the standard for preliminary approval of a derivative settlement in this Circuit. Plaintiffs therefore respectfully request that the Court enter the [Proposed] Order Preliminarily Approving Settlement ("Preliminary Approval Order"), which (a) grants preliminary approval of the Settlement, (b) directs that notice pursuant to the Stipulation of Settlement, including notice to be given to USAE Shareholders, and (c) schedules a hearing at which the Court will consider final approval of the Settlement.

---

[3] Wolf Haldenstein, counsel for Plaintiff Rich, will separately apply for $1,000,000 in attorneys' fees, up to $300,000 in expenses, and a $10,000 Plaintiff's Incentive Award for Rich. Defendants have agreed not to oppose this application. As set forth in the Stipulation of Settlement, any unclaimed portion of the Shareholder Distribution will be paid to the CAM Funds.

## II. FACTUAL BACKGROUND

On May 18, 2011 and May 26, 2011, Plaintiff Rich and the CAM Funds, respectively, filed derivative complaints in the United States District Court for the Central District of California on behalf of nominal Defendant USAE. In May 2016, the Court consolidated the two derivative cases. ECF No. 406. The Complaints allege, *inter alia*, that several defendants entered into two sham transactions that ultimately transferred a controlling interest in USAE to their family, friends and affiliates in order to enrich themselves at the expense of USAE shareholders and creditors. Plaintiffs' complaints include causes of action for breach of fiduciary duty, legal malpractice, vicarious liability, aiding and abetting breach of fiduciary duty, corporate waste, and civil conspiracy. The cases were vigorously litigated and the Parties engaged in extensive motion practice, interlocutory appeals, substantial discovery and numerous depositions (including discovery motion practice) and prepared substantial pre-trial submissions, including but not limited to briefing on and argument on multiple *in limine* motions. After several adjournments, the Court set a definitive trial date of February 28, 2017. *See* ECF No. 534.

The settlement of this matter resulted from discussions among and between plaintiffs and certain defendants over the course of several months, which included the retention of JAMS and the involvement of the Court. Initially, after informal discussions, plaintiffs and certain defendants agreed to participate in an all-day mediation on October 14, 2016 before two experienced mediators, Judge Daniel Weinstein (Ret.) and Jed Melnick of JAMS. *See* ECF No. 538. The mediation on October 14th did not result in resolution of the matter, and thereafter, the parties continued to litigate the case and prepare for trial. Nevertheless, after the mediation session, the parties continued settlement discussions with the help of JAMS. *Id.* As a result of these discussions, plaintiffs and Dentons reached an agreement in principle several weeks in advance of trial. On February 13, 2017,

1 counsel for plaintiffs and Dentons, respectively, submitted a joint submission 2 notifying the Court of the settlement in principle, which informed the Court of the 3 status of settlement discussions with the remaining defendants. On January 6, 4 2017, the Court entered an order appointing a United States Magistrate Judge as a 5 settlement mediator. ECF No. 544. On February 21, 2017, the Settling Parties 6 (excluding Dentons, which had already agreed to a settlement in principle) 7 participated in a settlement conference mediated by Magistrate Judge Gandhi. 8 ECF No. 544. At the conference, the Settling Parties (excluding Dentons) reached 9 agreement in principle on terms to settle the Litigation. *Id.*

10 Subsequently, the Settling Parties diligently have worked to memorialize the 11 agreement in principle reached with the assistance of Magistrate Judge Gandhi and 12 to obtain the consent of all Defendants to the Settlement. As set forth in the Status 13 Report and Request for the Issuance of Order to Show Cause jointly filed by the 14 Settling Parties on July 25, 2017, ECF No. 558, however, the conduct of certain 15 defendants and their counsel impeded the Settling Parties' efforts. Following the 16 Court's issuance of the Order Re: Status Report and Request for the Issuance of 17 Order to Show Cause on August 1, 2017, ECF No. 559, the Settling Parties 18 engaged in further, intensive discussions that yielded the Stipulation filed herewith.

19 However, when the Settling Parties were on the verge of filing the 20 Stipulation with the Court, on August 21, 2017, Kirkland engineered a bogus 21 bankruptcy filing in the United States District Court for the District of Delaware 22 (the "Bankruptcy Court"), on behalf of USAE LLC, a Delaware LLC purportedly 23 the successor to USAE. The Court was notified of the bankruptcy filing pursuant 24 to a notice filed by Mark Vega, Mr. Kirkland's counsel who has been sanctioned 25 by this Court (and the Ninth Circuit) on multiple occasions. The bankruptcy filing 26 was purportedly authorized by Robert Craig, a confederate of Kirkland, who 27 claimed to be USAE LLC's sole manager.

28

1 The CAM Funds were the only creditors of USAE that appeared in the 2 Delaware bankruptcy proceeding. As demonstrated by the CAM Funds in the 3 Delaware bankruptcy proceeding, the bankruptcy filing of USAE LLC was a sham 4 designed to interfere with this Court's jurisdiction and the impending submission 5 of a fully negotiated settlement agreement between Plaintiffs and virtually all 6 defendants. Plaintiffs respectfully submit that the record in the bankruptcy court 7 speaks for itself and demonstrates the same type of litigation abuse exhibited by 8 Kirkland in this case. At significant cost, the CAM Funds contested multiple 9 motions filed by USAE LLC to create the façade of a legitimate bankruptcy and 10 ultimately moved to dismiss the initial Chapter 11 filing and objected to the bogus 11 conversion to Chapter 7. On November 9, 2017, the United States Bankruptcy 12 Court for the District of Delaware entered an Order (the "November 9 Order") 13 dismissing the bankruptcy case in its entirety, including on the grounds of bad 14 faith. Indeed, during the November 9, 2017 hearing on the CAM Funds' motion to 15 dismiss the bankruptcy, the Bankruptcy Court stated:

> Frankly, I will tell you while almost any of the grounds provided in the motion to dismiss support the dismissal of the bankruptcy case, its strongest assertions are probably dismissal for cause under Section 1112 and/or 707(a) had this case been converted to a Chapter 7.
>
> . . . The record reflects no valid bankruptcy purpose to be served by either a Chapter 11 or 7 bankruptcy.

23 Pursuant to the November 9 Order, the Bankruptcy court also reserved 24 jurisdiction to determine a motion for sanctions, which will be filed by the CAM 25 Funds, and expressly directed that the unused portion of a retainer payment held by 26 Debtor's counsel shall be held in escrow and not encumbered, diminished or 27 transferred pending further order of the Court.

The Stipulation filed herewith is the result of intensive discussions and negotiations among the Settling Parties, and, as set forth further herein and in the Stipulation, will result in the settlement of the claims against all Defendants, with the exception of the default against ADI and the awards of sanctions ordered by the Court or judgments reflecting liability for such orders against Kirkland, ADI and their counsel, Mark Vega.

## III. THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT

### A. Legal Standard for Preliminary Approval

"There is a strong policy favoring compromises that resolve litigation, and case law in the Ninth Circuit reflects that strong policy." *In re NVIDIA Corp. Derivative Litig.*, No. C-06-06110, 2008 WL 5382544, at *2 (N.D. Cal. Dec. 22, 2008). "There is an overriding public interest in settling and quieting litigation." *Id.* (quoting *MWS Wire Indus., Inc. v. Cal. Fine Wire Co.*, 797 F.2d 799, 802 (9th Cir. 1996)) (citations omitted). "Because shareholder derivative actions are 'notoriously difficult and unpredictable . . . settlements are favored.'" *Id.* (quoting *In re AOL Time Warner S'holder Derivative Litig.*, No. 02-cv-6302, 2006 WL 2572114, at *3 (S.D.N.Y. Sept. 6, 2003)) (citations omitted).

Settlement and dismissal of a shareholder derivative action requires court approval. *See* Fed. R. Civ. P. 23.1(c); *In re MRV Commc'ns, Inc. Derivative Litig.*, No. 08-cv-03800, 2013 WL 2897874, at *2 (C.D. Cal. June 6, 2013). "[U]nder Ninth Circuit precedent, [the] Court must grant preliminary approval of a settlement, including approval of the notice to shareholders and the proposed method of notice, before having the final settlement hearing." *NVIDIA*, 2008 WL 5382544, at *2; *see also MRV Commc'ns*, 2013 WL 2897874, at *2 ("[A]pproval of a derivative action appears to be a two-step process, similar to that employed for approving class action settlements, in which the Court first determines whether a proposed settlement deserves preliminary approval and then, after notice of the

1  settlement is provided to class members, determines whether final approval is
2  warranted.") (citations omitted).

3       "In order to grant preliminary approval, the Court need only conclude that
4  the settlement of the claims on the agreed upon terms is 'within the range of
5  possible approval.'" *NVIDIA*, 2008 WL 5382544, at *2 (quoting MANUAL FOR
6  COMPLEX LITIGATION § 30.41, at 237 (3d ed.1995)). "To determine whether the
7  Settlement is 'within the range of possible approval,' the Court must evaluate
8  whether the Settlement is 'fair, reasonable, and adequate[.]'" *Id.* "The preliminary
9  determination establishes an initial presumption of fairness." *In re Hewlett-
10 Packard Co. S'holder Derivative Litig.*, No. 12-cv-06003, 2015 WL 1153864, at
11 *3 (N.D. Cal. Mar. 13, 2015) (citation omitted). "The district court must balance a
12 number of factors, including 'the strength of the plaintiffs' case; the risk, expense,
13 complexity, and likely duration of further litigation; . . . the amount offered in
14 settlement; the extent of discovery completed and the stage of the proceedings;
15 [and] the experience and views of counsel[.]'" *Id.* (citations omitted). "To
16 determine whether a proposed settlement is 'within the range of possible approval,'
17 the Court also ensures it is 'not the product of fraud or overreaching by, or
18 collusion between, the negotiating parties.'" *Id.* (citation and internal quotations
19 omitted).

20     **B.**     **The Settlement Satisfies the Standard for Preliminary Approval**
21

22       The Court should grant preliminary approval of the Settlement because it
23 provides substantial benefits to USAE Shareholders and creditors. Informed by
24 extensive litigation and discovery, these benefits were secured through arm's
25 length negotiation by experienced counsel, with the help of two experienced
26 mediators and Magistrate Judge Gandhi, acting as a special settlement master
27 pursuant to this Court's order. As a result, the Settlement falls within the range of
28 possible approval.

### 1. The Settlement Confers Substantial and Material Benefits Upon USAE Shareholders and Creditors

"The principal factor to be considered in determining the fairness of a settlement concluding a shareholders' derivative action is the extent of the benefit to be derived from the proposed settlement by the corporation, the real party in interest." *In re Atmel Corp. Derivative Litig.*, No. C-06-4592, 2010 WL 9525643, at *12 (N.D. Cal. Mar. 31, 2010) (citation omitted). The Settlement resolves a case of substantial complexity and cost and provides USAE Shareholders and creditors with sizeable compensation, while avoiding the risks inherent in litigation. As set forth in detail in the Stipulation of Settlement, the Settlement provides for the payment of $12.2 million by Defendants to be distributed to USAE Shareholders and creditors. Thus, the Settlement is within the range of possible approval and should be preliminarily approved.[4]

### 2. The Settlement Was Reached Through Arms-Length Bargaining with the Assistance of Experienced Mediators

A settlement enjoys a presumption of fairness if it "is recommended by . . . counsel after arm's-length bargaining." *Villanueva v. Morpho Detection, Inc.*, No. 13-cv-05390, 2015 WL 4760464, at *6 (N.D. Cal. Aug. 12, 2015) (citation omitted). Here, the Settlement was reached after extensive arm's-length negotiations between counsel for the Settling Parties over many months and involved numerous face-to-face and telephonic discussions. Although informal settlement discussions took place prior to October 2016, plaintiffs and virtually all defendants participated in a formal JAMS mediation session before Judge Weinstein and Mr. Melnick, both of whom are experienced, nationally-known mediators. That mediation session took place on October 14, 2016, and did not result in a settlement. Plaintiffs and the non-defaulted defendants continued to

---

[4] In addition, the default entered against ADI will remain in place, and Plaintiffs thus may pursue additional recovery by seeking a default judgment.

- 8 -

litigate and prepare for trial in the ensuing months, including hearings on discovery and evidentiary motions before the Court and the submission of virtually all pre-trial submissions required by the Court. Neither side at that time proceeded as if settlement was a foregone conclusion and any assertion that a settlement in this matter is collusive or not the result of hard fought negotiations would be fanciful.

Several months of litigation ensued, including plaintiffs' deposition of Kirkland in the U.S. Virgin Islands and others. On January 6, 2017, plaintiffs and non-defaulted Defendants appeared for a pre-trial conference and to argue multiple *in limine* motions. During the pre-trial conference, counsel for plaintiffs and Dentons reported to the Court on the status of ongoing settlement discussion between plaintiffs and Dentons. At that time, the Court entered an order appointing Magistrate Judge Gandhi as special settlement master. Pursuant to the Court's order, Magistrate Judge Gandhi entered an order scheduling a mediation session on February 21, 2017.

Between the final pre-trial conference and February 21, 2017, discussions among all parties continued despite substantial pre-trial activity, including discussions prompted and assisted by Judge Weinstein and Mr. Melnick.[5]

---

[5] Daniel Weinstein is a former judge who now works as a JAMS mediator. *See Hon. Daniel Weinstein (Ret.)*, available at https://www.jamsadr.com/weinstein/. He specializes in mediating complex civil disputes, including securities cases involving major companies. *Id.* He frequently teaches mediation methods to fellow mediators and lawyers. *Id.* Jed Melnick has been involved in the mediation and successful resolution of hundreds of complex disputes. *See Jed D. Melnick,* available at https://www.jamsadr.com/melnick/international. He handles a wide variety of cases, but has significant experience in complex financial cases including derivatives and major bankruptcies. *Id.* Judge Gandhi has served as a mediator for numerous settlement conferences. He currently serves as Vice-Chair of the Central District of California's Alternative Dispute Resolution Committee and is a former Co-Chair of the Alternative Dispute Resolution Committee of the American Bar Association's Litigation Section. *See Judge Jay C. Gandhi,* available at

Ultimately, during this process, plaintiffs and Dentons agreed to the settlement in principle that forms the basis of the Stipulation. On February 21, 2017, per order, Magistrate Judge Gandhi convened a settlement mediation session, which resulted in a resolution of the entire matter concerning plaintiffs and the Settling Parties.

The substantial negotiations at arms' length between and among parties and their co-counsel weighs strongly in favor of preliminary approval of the proposed Settlement. *See, e.g.*, *NVIDIA*, 2008 WL 5382544, at *3 (derivative settlement preliminarily approved where the settlement "appears to be the result of good faith arm's-length bargaining."); *Hewlett-Packard*, 2015 WL 1153864, at *5 (derivative settlement preliminarily approved where the settlement "involved extensive negotiations conducted on behalf of all parties by experienced and informed counsel."); *Atmel*, 2010 WL 9525643, at *13 ("Judge Phillips' participation [as mediator] weighs considerably against any inference of a collusive settlement.").[6]

### 3. The Settlement Appropriately Balances the Risks of Continued Litigation with the Benefits Conferred on USAE Shareholders and Creditors

Plaintiffs believe and assert that the claims alleged in the Litigation have merit. Nevertheless, Plaintiffs recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Litigation through trial and, potentially, through appeals. *See*, *e.g.*, *Maher v. Zapata Corp.*, 714 F.2d 436, 466

---

https://www.cacd.uscourts.gov/judges-requirements/court-programs/judge-jay-c-gandhi. He is a frequent speaker and writer on the topic of alternative dispute resolution. *Id.*

[6] Moreover, the arm's-length negotiation of the Settlement was conducted by highly-qualified counsel, who have extensive experience in stockholder derivative litigation, which supports preliminary approval of the Settlement. *See, e.g.*, *Nat'l Rural Telecomm'ns Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts underlying litigation."); *Atmel*, 2010 WL 9525643, at *13 ("[T]he involvement of multiple counsel from different firms suggests a lack of collusion.").

(5th Cir. 1983) (derivative settlement approved where "the parties' conclusion that any possible benefit to Zapata from pursuing the causes of action would be more than offset by the additional cost of litigation was based on an intelligent and prudent evaluation of their case"). Plaintiffs have also taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as the Litigation, as well as the difficulties and delays inherent in such litigation. Plaintiffs are also mindful of the inherent problems of proof and possible defenses to the claims asserted in the Litigation. Plaintiffs have further considered the uncertainty and difficulties associated with collecting on any judgments against Defendants. Based on their evaluation, and the evaluation of Plaintiffs' counsel, Plaintiffs have determined that it is desirable to settle the Litigation on the terms set forth in the Stipulation.

### IV. THE PROPOSED NOTICE TO USAE SHAREHOLDERS AND CREDITORS IS REASONABLE

The purpose of providing notice of a proposed settlement is to "apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Villanueva*, 2015 WL 4760464, at *7 (citation omitted). The Parties have agreed, subject to Court approval, that the Notice Administrator will mail the Notice to USAE Shareholders and will publish Summary Notice in the national edition of *Investor's Business Daily*. *See* Declaration of Rachele R. Rickert ("Rickert Decl.") ¶¶ 4–5. Plaintiffs have identified four shareholder lists which they received through discovery during the Litigation. *See* Rickert Decl. ¶ 4. Each list identifies fewer than two hundred sixty (260) shareholders. *See* Rickert Decl. ¶ 4. Plaintiffs will provide these lists to the Notice Administrator, who will eliminate duplication and mail notice to each identified shareholder. *See* Rickert Decl. ¶ 4. As these lists are the most accurate, contemporaneous shareholder records available, Plaintiffs are confident that this mail-notice, supplemented with publication notice directed to USAE Shareholders and creditors

in *Investor's Business Daily*, is reasonably calculated to apprise interested parties of their opportunity to present objections to the proposed settlement and to participate in the Shareholder Distribution and, as a result, that the proposed notice satisfies Rule 23.1 of the Federal Rules of Civil Procedure and the demands of due process.[7] *See, e.g.*, *Lloyd v. Gupta*, No. 15-CV-04183-MEJ, 2016 WL 3951652, at *7 (N.D. Cal. July 22, 2016) (notice by mail to stockholders); *Barovic v. Ballmer*, No. 2:14-CV-00586-JCC, 2016 WL 199674, at *2 (W.D. Wash. Jan. 13, 2016) (notice by publication in *Investor's Business Daily*); *MRV Commc'ns*, 2013 WL 2897874, at *1 (same).

## V. CONCLUSION

The Settlement is a fair resolution of this complex and long-running Litigation. The Settlement confers substantial value on USAE Shareholders and creditors. Accordingly, Plaintiffs respectfully request that the Court preliminarily approve the Stipulation and the method of notice, and schedule the Settlement Hearing to consider final approval of the Settlement.

DATED: December 15, 2017

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
RACHELE R. RICKERT
MARISA C. LIVESAY
BRITTANY N. DEJONG

By: */s/ Rachele R. Rickert*
       RACHELE R. RICKERT

750 B Street, Suite 2770
San Diego, CA 92101
Telephone: 619.239.4599
Facsimile: 619.234.4599

---

[7] Plaintiffs' counsel respectfully submit that the publication of the Summary Notice to USAE Shareholders and creditors, if any, is the best practicable notice to shareholders and creditors under the circumstances and reasonably calculated to apprise shareholders and creditors of any right to object to the settlement. In this regard, it should be noted that the CAM Funds senior secured notes, plus applicable interest and penalties, would subsume the entire Settlement Amount.

rickert@whafh.com
livesay@whafh.com
dejong@whafh.com

**WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP**
DANIEL W. KRASNER
270 Madison Avenue
New York, NY 10016
Telephone: 212.545.4600
Facsimile:  212.545.4653
krasner@whafh.com

*Attorneys for Plaintiff Frederick Rich*

DATED:  December 15, 2017

**HOGAN LOVELLS US LLP**
MICHAEL C. HEFTER
RYAN M. PHILP

By: */s/ Michael C. Hefter*
        MICHAEL C. HEFTER
875 Third Avenue
New York, New York 10022
Telephone:  212.98.3000
Facsimile:  212.918.3100
Michael.Hefter@hoganlovells.com
Ryan.Philp@hoganlovells.com

*Attorneys for Plaintiffs CAMOFI Master
LDC and CAMHZN Master LDC*

### DECLARATION CONCERNING CONCURRENCE

I, Rachele R. Rickert, am the CM/ECF User whose identification and password are being used to file the foregoing PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT.  In compliance with L.R. 5-4.1.4(2)(i), I hereby attest that Michael C. Hefter has concurred in this filing's content and has authorized its filing.

DATED:  December 15, 2017          */s/ Rachele R. Rickert*
                                                        RACHELE R. RICKERT

USAE:24327